848 F.2d 579
 Fed. Sec. L. Rep. P 93,901
W.L. BANE, Jr., et al., Plaintiffs-Appellants Cross-Appellees,
v.
SIGMUNDR EXPLORATION CORPORATION, et al., Defendants,
Landmark Bank of Fort Worth Corporation, Defendant-Appellee
Cross-Appellant.
 No. 87-2799.
 United States Court of Appeals,
Fifth Circuit.
 June 30, 1988.
 
 Woodrow Epperson, Houston, Tex., for plaintiffs-appellants cross-appellees.
 B. Frank Cain, Tim G. Sralla, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for defendant-appellee cross-appellant.
 Appeal from the United States District Court for the Southern District of Texas.
 Before THORNBERRY, WILLIAMS and DAVIS, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants appeal the summary judgment rendered in favor of defendant-appellee, Landmark Bank of Fort Worth (Landmark), after the district court dismissed the plaintiff-appellants' suit charging that the bank aided and abetted others in violating the securities laws. Defendant-appellee cross-appeals the court's denial of sanctions against the plaintiffs-appellants under Rule 11 of the Federal Rules of Civil Procedure. We affirm.
 
 I.
 
 2
 In 1985, plaintiffs-appellants sued George McLendon and George Davis, along with their eight related companies (principals), to recover funds they invested in twenty-five oil and gas drilling programs, including a five-well drilling program known as the Walker 1-5 drilling program. These sales generated approximately $17,000,000 for the principals, who are now under indictment for securities fraud. Landmark was later added as a party defendant to the Rule 10b-5 suit on the ground that it allegedly aided and abetted the principals by influencing potential investors to purchase interests in the Walker 1-5 drilling program. Landmark's relationship with the roughly 150 plaintiffs takes three different forms. Four of the plaintiffs-appellants[1] collectively known as "primary plaintiffs," obtained loans from Landmark to finance their purchase of limited partnerships in the Walker 1-5 Program. Six of the plaintiff-appellants, known collectively as "secondary plaintiffs," purchased limited partnerships in the Walker 1-5 drilling program from defendant Uni-Petro Exploration Corporation (Uni-Petro) which used Landmark as an escrow agent on this program. Landmark had no other connection with the secondary plaintiffs beyond its role as an escrow agent. Finally, the remaining approximately 106 plaintiffs (unrelated plaintiffs) had no connection with Landmark, or with the Walker 1-5 Program, but rather participated in thirty other limited partnerships promoted by the principal defendants. The primary and secondary plaintiffs argued in the district court that Landmark rendered knowing substantial assistance to the 10b-5 violation by serving as an escrow agent, loaning money to investors, and allowing the principal defendants to include certain Landmark forms in investor packets, thereby lending credibility to the scheme as a whole. Specifically, the plaintiffs-appellants point to a Landmark loan application, "Memo to the Investor," and "Summary of Loan Procedure and Performance Schedule" that were included in the packets sent to prospective investors, including both primary and secondary plaintiffs.
 
 
 3
 After discovery, the unrelated plaintiffs nonsuited Landmark. The district court dismissed the remaining plaintiffs' suit against Landmark after it found that the summary judgment evidence was insufficient to raise a question of fact that Landmark aided and abetted others in a 10b-5 violation. The court specifically found that the summary judgment evidence revealed that Landmark did nothing more than engage in routine banking transactions including extension of financing to investors and thus had not lent knowing substantial assistance to the fraudulent scheme. The district court, however, rejected Landmark's motion for Rule 11 sanctions for the unrelated plaintiffs' action after finding that the original suit was not "frivolous" within the meaning of Rule 11. This appeal followed.
 
 II.
 
 4
 In Woodward v. Metro Bank of Dallas, 522 F.2d 84 (5th Cir.1975), this court set out the test for aider and abettor liability under Rule 10b-5:1 There must have been a securities violation by the primary party;2 the aider and abettor must have had a "general awareness" of its role in a Rule 10b-5 violation; and3 the aider and abettor must have "knowingly and substantially assisted" in the Rule 10b-5 violation.
 
 
 5
 Id. at 94-95; See also Woods v. Barnett Bank of Ft. Lauderdale, 765 F.2d 1004, 1009 (11th Cir.1985) (citing cases); DeLany v. Blunt, Ellis & Loewi, 631 F.Supp. 175, 179 (N.D.Ill.1986).
 
 
 6
 Because the district court dismissed appellants' 10b-5 action against Landmark for failing to demonstrate that Landmark gave knowing substantial assistance to the principals, we also focus on that prong of the test established by Woodward. As we stated in Woodward, "[i]f the evidence shows no more than a transaction constituting the daily grist of the mill, we would be loathe to find 10b-5 liability without clear proof of intent to violate the securities laws." 522 F.2d at 97. We now turn to the actions of Landmark that plaintiffs rely on to establish that Landmark lent substantial assistance to the principals.
 
 
 7
 The plaintiffs-appellants first argue generally that Landmark's extension of loans, secured by interests purchased in the Walker 1-5 Program, amounts to "substantial assistance" to the principals. The fact, however, that Landmark took a security interest in the partnership share purchased in the Walker 1-5 Program to secure its loans is not evidence of substantial assistance because banks routinely take a security interest in an asset acquired through its financing. Moreover, Landmark did not lend purchase money to all loan applicants who wished to purchase shares in the Walker 1-5 drilling program but rather required individuals to qualify for loans based on individual creditworthiness. Landmark rejected at least five of the approximately twenty-two loan applications received from potential investors in the Walker 1-5 Program because of their inadequate financial standing. We agree with the district court that the summary judgment evidence of loans by the bank to purchasers of shares in the Walker 1-5 Program showed nothing more than routine banking transactions between the primary plaintiffs and Landmark.
 
 
 8
 Plaintiffs-appellants also argue that Landmark, by authorizing the principals to include Landmark documents in investor packages, rendered substantial assistance to the principals. The Landmark forms mailed by the principals to potential investors included loan application forms, a "Memo to the Investor," and a "Summary of Loan Procedure and Performance Schedule." Even assuming that Landmark authorized their use by the principals, the inclusion of these documents in the investor packages does not constitute substantial assistance for aiding and abetting a 10b-5 violation.
 
 
 9
 The loan application form calls for the usual financial information about the potential borrower that a lender needs to evaluate the applicant's credit. The Memo to the Investor is a one-page document that lists the documents the bank requires before it will consider the applicant for a loan. These include a credit application, financial statement, and copies of the investor's tax return for the previous two years. The document does not refer to the Walker 1-5 Program or any other investment.
 
 
 10
 The Summary of Loan Procedure and Performance Schedule gives Landmark's interest rate for loans under the Walker 1-5 Program and computes monthly payments based on these rates. The document contains no representations regarding the reliability of the principal defendants or the risks of investing in the Walker 1-5 Program.[2] 2]
 
 
 11
 We are unable to find, as suggested by the plaintiffs-appellants, anything in these documents that goes beyond routine or typical banking practices to support an allegation of knowing substantial assistance. Woodward, 522 F.2d at 97; see also Woods, 765 F.2d at 1012; Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, in Pari Delicto, Indemnification, and Contribution, 120 U. Pa. L. Rev. 597, 646 (1972). As previously noted, the routine extension of a loan does not amount to substantial assistance. See Seattle-First Nat'l Bank v. Carlstedt, 678 F.Supp. 1543, 1549 (W.D.Okla.1987) (citing cases). Similarly, routine solicitation of a loan and obtaining financial and credit information for a loan is not substantial assistance. This summary judgment evidence will not support an inference that Landmark sought to cloak the principal defendants in an aura of respectability or reliability and thereby rendered knowing substantial assistance to the principals. See Grimes, Hooper & Messer, Inc. v. Pierce, 519 F.2d 1089 (9th Cir.1975); see also Admiralty Fund v. City Nat'l Bank, 677 F.2d 1315, 1316 (9th Cir.1982). The district court, therefore, properly concluded that Landmark was entitled to summary judgment.
 
 III.
 
 12
 In its cross appeal for Rule 11 sanctions, Landmark appeals only the denial of sanctions against the unrelated plaintiffs, i.e., those plaintiffs who purchased interests from the principal defendants in drilling partnerships other than the Walker 1-5 Program and with whom Landmark had no relationship. Landmark argues that before the unrelated plaintiffs were nonsuited, Landmark was required to engage in extensive discovery and hearings that could have been avoided if plaintiffs-appellees had made the minimal inquiry needed to show that they had no case against Landmark. Our review of the district court's denial of Rule 11 sanctions is controlled by our recent en banc decision in Thomas v. Capital Security Servs., Inc., 836 F.2d 866 (5th Cir.1988) (en banc), in which we reaffirmed the district court's discretionary powers under Rule 11 and limited our review to an abuse of discretion. Although it is a close question, we cannot say the district court abused its discretion in denying sanctions. We are persuaded that the district court was justified in concluding that the unrelated plaintiffs could legitimately allege that they purchased partnership interests in part because they learned that Landmark was vouching for the credibility of the principals in one of their drilling programs. The district court did not abuse its discretion in determining that, for Rule 11 purposes, this alleged knowledge was enough to support the allegations that Landmark aided and abetted the principals in connection with the unrelated plaintiffs' transaction.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Originally, two other primary plaintiffs, Charlotte and Kenneth Ray Taylor joined in this appeal as primary plaintiffs but were dismissed from the appeal on a joint motion of the parties
 
 
 [2]
 The principals also included in the investor packets a document presenting various assumptions on how long it would take to repay the loan from income generated by the investment, assuming differing amounts of production from the wells. The summary judgment evidence revealed that this instrument was included without Landmark's knowledge