**WINGSCO ENERGY ONE, et al., Plaintiffs,**

v.

**VANGUARD GROUPS RESOURCES 1984, INC., et al., Defendants.**

Civ. A. Nos. H–86–452, H–86–4236, H–86–4254, H–86–4255, H–86–4286, H–86–4288, H–86–4312 and H–86–4338.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 11, 1988.

---

See also 699 F.Supp. 1241.

Ronald J. Restrepo, Andrew Harvin, Hutcheson & Grundy, Edward K. White, Houston, Tex., for plaintiffs.

Cynthia E. Joyce, William B. Chaney, Shank, Irwin, Coant & Lipshy, Dallas, Tex., for Northwestern Nat. Ins. Co. of Milwaukee, Wis.

Max Hendrick, III, Vinson & Elkins, Houston, Tex., for First City Bank–Westheimer Plaza.

Darryl W. Malone, Woodard, Hall & Primm, Houston, Tex., for Chrysler Capital Corp. (formerly E.F. Hutton Credit Corp.).

Ward A. Busey, Houston, Tex., pro se.

David T. Maddox, Calvin, Dyleswki, Gibbs, Maddox, Russell & Verner, Houston, Tex., for Greycas, Inc. and Greyhound Leasing & Finance Corp.

Michael H. Moirano, Atty.-in-charge, Dahl & Moirano, Chicago, Ill., for GAF Finance Corp.

Mark Singleton, Houston, Tex., pro se.

Joan Kehlhof, Alletag, Jones & Eyberg, Houston, Tex., for Jack Singleton.

Regina Giovannini, Baker, Brown, Sharman & Parker, Houston, Tex., for David S. Jeffcott.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

This complex securities case involves hundreds of individual investors who either originally brought suit against or filed counterclaims against four solvent Defendants, Greycas, Inc. and Greyhound Leasing & Financial Corporation (hereinafter "Greycas" collectively), Chrysler Capital Corporation, the successor in interest to E.F. Hutton Credit Corporation (hereinafter referred to as "CCC"), Northwestern National Insurance Company of Milwaukee, Wisconsin (hereinafter "Northwestern") and First City Bank—Westheimer Plaza, N.A. ("First City"). Plaintiffs also brought suit against Vanguard Groups Resources 1984, Inc., Vanguard Groups International, Robert L. Sonfield, Jack Singleton, Mark Singleton, Allan Esrine, ITI Glendale, Inc., various Vanguard Oil Limited Partnerships, and individuals who do not figure in this disposition of the pending motions for summary judgment.

This case has come before the Court in an unusual procedural posture. Before turning to the claims and motions of the Defendants and the Plaintiffs, the Court will recite the uncontroverted fact and procedural history of this suit.

### I. *Factual Background.*

The Plaintiffs in this suit are investors who in 1984 purchased interests in leveraged oil and gas limited partnerships promoted by an entrepreneur named Edward G. Baker. Due to alleged misuse of partnership funds by Edward G. Baker, the limited partnerships failed to live up to the investors' expectations, and, as discussed below, many of these investors brought suit against the Defendants seeking monetary relief and rescission of notes and indemnity agreements.

Vanguard Groups Resources 1984 (VGR) and Vanguard Groups International (VGI) engaged, from 1981 to 1985, in the syndication of limited partnership tax shelter primarily for the production and sale of oil and gas. The twelve 1984 Vanguard Oil Limited Partnerships which are the subject of this suit were sold to 347 investors. VGI was the general partner of 84L–1, VGR was general partner of 84L–2 through 84L–12. These investments were highly leveraged to increase the anticipated tax benefits and to provide a greater rate of return to the investors. Most investors made a down payment of 5% of the purchase price of his or her interest and signed an investor note payable to the order of the limited partnership for the unpaid 95% of the purchase price. As security for payment of the principal and interest under the investor note, each partnership purchased a financial guarantee bond from Northwestern. The bond obligates Northwestern to make payment of each investor note to the limited partnership or to a permitted assignee in the event that a maker of the investor note failed to do so. The investors, the makers of the investor notes, agreed to indemnify Northwestern in the event that Northwestern was required to make payment on the investors' behalf. Northwestern acted as surety.

Allan Esrine of ITI Glendale acted as a financial intermediary to secure bonding of the investors' notes. Esrine collected bond premiums on behalf of Northwestern and delivered the premiums to Financial Guaranty Corporation, Northwestern's licensed agent, or to Northwestern. Esrine suggested that investors be moved from the L–10 through L–12 programs to the L–9 program when those four programs were undersubscribed. The investors gave Vanguard the authority to make such a change, and Sonfield, counsel for Vanguard, approved.

An additional feature of the 1984 Vanguard Limited Partnerships, with the exception of Vanguard Oil 84L–1, was the purchase by the partnership of an interest bearing instrument from the lender. The interest bearing instruments known as zero coupon bonds were notes payable by the lender structured to provide that interest would accrue and be compounded periodically but would not be payable until maturity. These interest bearing instruments were pledged as collateral for loans from either CCC or Greycas. The loans, collat-

eralized by the zero coupon bonds, were allegedly used to finance the partnership's operations. The partnership debt to the lenders was also secured by the investor notes. Furthermore, the applicable bond by Northwestern served as security for payment of the investor notes and was assigned to the lender.

E.F. Hutton Capital Corporation, now CCC, agreed to act as the lender to the first seven of the twelve Vanguard Limited Partnerships. CCC approved a loan to Vanguard Oil 84L–1 on September 26, 1984. The loan to 84L–1 was only secured by the investor notes. Subsequently, from late October until early December of 1984, E.F. Hutton Capital Corporation extended loans to Vanguard Oil 84L–2 through 84L–7. These loans were secured by the investor notes and the zero coupon bonds. Greycas provided the financing for Vanguard Oil L–8 through 84L–12.

The investors signed estoppel letters when they made their investment. These letters acknowledged that E.F. Hutton (CCC) acted solely in the capacity of a lender and that the lender made no representations or recommendations whatsoever concerning the investment. Also the letter states that investors acknowledge CCC made no investigation of the persons (including the promoters) involved. Based on these letters CCC has filed a motion for summary judgment based on promissory estoppel for reimbursement of CCC's costs and attorney's fees.

In mid 1985 the Vanguard Limited Partnerships failed to make quarterly interest payments to Chrysler Capital Corporation and Greycas. Accordingly, the lenders looked to the makers of the investor notes for payment and when the makers (the investors) failed to comply with the request for payment, the lenders looked to Northwestern for payment under the bonds. Northwestern has made a number of payments as required by the bonds and has initiated collection actions against the Plaintiffs (the investors) under the indemnity agreement signed by the nonpaying investors. After or in anticipation of these collection actions by Northwestern, a num-

ber of the investors filed suit or were sued in federal court by Northwestern asserting federal securities law and state law causes of action.

After Vanguard had a disagreement with Interfirst Bank, First City–Westheimer Plaza was appointed substitute escrow agent for the 1983 Vanguard L–10 drilling program. Later First City agreed to also serve as escrow agent for the 84L–1 program. First City reviewed the confidential memoranda sent to investors in that program. First City was also escrow agent for the L–2 through L–12 programs.

First City was the escrow agent for the money loaned by Greycas and CCC to the Vanguard Limited Partnerships. The loans were paid by Greycas and Chrysler Capital Corporation to the Bank which subsequently distributed funds at the direction of the general partner. These allegedly misdirected payments are one of the bases of Plaintiffs' claims against First City Bank.

Pursuant to the terms of the escrow agreements entered into in the 12 Vanguard 1984 programs, a Certificate of Closing was required before the escrow agent, First City, could properly deliver funds into the escrow account for the limited partnerships. If that certificate was not received by the closing date the escrow agent had to return the investors' money. However, Robert Sonfield, counsel for the limited partnerships, issued an opinion letter that said First City could hold escrow funds without the closing letter. Relying on the Sonfield opinion and that of Charles Kennedy, its own counsel, First City accepted escrow funds for the limited partnerships and did not return investor funds even though closing certificate was received prior or to the closing date in some programs. Also relying on Sonfield's opinion, First City released funds even though the program was extended, in some cases, beyond the date contained in the escrow agreement.

First City subsequently transferred, at the direction of the General Partner of the limited partnerships, money from the escrow account to the operating accounts of Vanguard Group International and Van-

guard Group Resources. This was not done until a closing certificate was actually received. It is uncontroverted that only one escrow account was maintained and separate accounts for each limited partnership were not maintained. Alcala Deposition at 45. Funds were segregated within that account.

Plaintiffs contend that Greycas "faked" the closing of the 84L–8 and 84L–9 limited partnerships on December 28, 1984, since the actual closing took place in February and March of 1985. It is uncontroverted that on December 28, 1984, the loan and security agreements between the limited partnerships and Greycas were executed in New York. The partnership promissory notes were also executed at that time and Greyhound Leasing and Financial Corporation issued the zero coupon notes. Also on December 28, 1984, five cashier's checks (one for each of the partnerships in question) were tendered in Houston in exchange for letters of credit. These letters of credit were held until Greyhound had received the bond from Northwestern for the investors' promissory note and on February 8, 1985, the 84L–8 funds were released. See February 4, 1985, Letter from Reed to Baker and the Affidavits of Larry Pointer and Piasecki at 126. Similarly, after Greyhound had received the bond from Northwestern, Greyhound released the letters of credit for the 84L–9 program on March 27, 1985. The L–10 through L–12 programs were not activated and Greycas' money was returned on May 29, 1985. It is clear from the summary judgment evidence submitted by both Plaintiffs and Defendants that the closing took place on December 28, 1984, and that funding was withheld so that Greyhound could obtain the bond from Northwestern.

Plaintiffs contend that the offering materials contain material misrepresentations in that the memoranda stated that funds would be returned if the partnerships were not "activated" by December 31, 1984, yet two of the Vanguard Partnerships did not obtain the funds until February and March of 1985. The Court finds Plaintiffs' reliance upon semantics to be disingenuous. The evidence is clear: The partnerships were activated on December 28, 1984, when documents were signed in Houston and New York. The fact that the funds were held in the form of letters of credit until the investor bonds were issued does not affect the validity of the loan closing.

Some of the investors allege that they were improperly moved from the 84L–10 through 12 programs to the 84L–9 program. The switch was necessary since L–9 through L–12 were not fully subscribed. The investors consented to the switch. See Knapp Depo. Ex. 21, Ex. D–H, Greycas Reply to Plaintiff's Response to Motions for Summary Judgment. These consent letters were executed in March of 1985. Also, Sonfield opined that Vanguard had the authority to move investors between partnerships. Sonfield letter to Esrine dated March 14, 1985. The L–10 through L–12 programs were never activated. The investors in those programs have only brought suit for the return of their deposits.

## II. *Procedural History.*

In December of 1985, after the partnerships had defaulted on the promissory notes and payment was being sought from the individual investors, four investors filed suit in the 333rd Judicial District Court of Harris County Texas against a number of persons including most of the Defendants in this case. On January 30, 1986, within thirty days after service of the complaint, Chrysler Capital Corporation removed this case to federal court. During the next eighteen months Plaintiffs amended their complaint a number of times so that there are currently 152 Plaintiffs represented in H–86–452 by Mr. Restrepo of the Hutcheson & Grundy law firm (these Plaintiffs are known as the "old" Plaintiffs).

In late 1986 Northwestern filed suit in the Southern District of Texas against many of the investors in the various Vanguard Partnerships for breach of contract seeking to collect funds due under the indemnity agreement entered into between the investors and Northwestern.

On January 7, 1988, this Court, upon motion of Don Bedard and other Plaintiffs represented by Leonard Weiner (hereinafter known as the "new" or Weiner Plaintiffs), consolidated the seven suits brought by Northwestern against the various investors in the Southern District with H–86–452. At that time the Defendants in the consolidated cases were realigned as Plaintiffs in H–86–452 and the new Plaintiffs were bound by the eighth amended complaint filed in H–86–452. Counsel for the other Plaintiffs added by the consolidation of these cases have agreed to be bound by the eighth amended complaint in H–86–452. Many of the Plaintiffs added by the January 7, 1988, order are *pro se* or are represented by counsel who have taken no active part in opposition to the motions for summary judgment *sub judice.*

Certain recently consolidated investors, the so called Gissel Investors, have been actively represented by Michael Gibson. In granting summary judgment for certain Defendants in H–86–452 the Court has considered the responses to the motions filed by each of the Plaintiffs' attorneys representing various segments of the investors. Investors who did not respond to the motions for summary judgment or whose counsel has chosen not to respond are nevertheless bound by the orders of this Court.

At the conference held on July 1, 1988, regarding the pending motions all three sets of Plaintiffs' counsel agreed that claims brought pursuant to sections 12(1) and 12(2) of the Securities Act of 1933 for unlawful sale of unregistered securities is no longer cognizable against either Chrysler Capital Corporation or Greycas. *See Pinter v. Dahl*, —— U.S. ——, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Therefore pursuant to the stipulation of counsel the Court grants judgment in favor of Chrysler Capital Corporation and Greycas on those claims and those claims against those Defendants are DISMISSED.

The Court will now discuss the motions for summary judgment.

### III. *First City Bank.*

After hearing oral argument of counsel on August 4, 1988, the Court hereby denies First City Bank's motion for summary judgment and GRANTS Plaintiffs' motion for summary judgment against First City Bank in part. The Court finds that genuine issues of material fact exist regarding whether the breach of escrow contract and fiduciary duty by First City are the proximate cause of the investors' loss. Also, Plaintiffs have not briefed nor asked for summary judgment regarding their damages against First City.

### A. Breach of Escrow Agreement.

█ It is uncontroverted that First City and Vanguard entered into a standard escrow agreement for each 1984 program. Escrow Instruction No. 4 states in pertinent part that:

> If the Escrow Agent does not receive a Certificate of Closing executed by the General Partner certifying that the minimum subscription ... has been subscribed (which may include subscriptions by the General Partner or its affiliates) prior to [the closing date], then the escrow agent shall, as promptly as practicable, return to each subscriber the amount of his payment without interest or deductions.

It is uncontroverted that the escrow agent did not receive a certificate of closing prior to the closing date in the 84L–1, 2, 5, 6, 8, 9, 10, 11 and 12 programs. First City violated paragraph 4 when they did not return the investors' money. Certificates of closing were received, however, before money was released from the escrow account to the general partner.

It is uncontroverted that Vanguard Group Resources did not provide First City with a timely notice that the 84L–1, 2, 5 and 6 programs were being extended. The initial offering deadline for each of these programs expired before First City received notice of a proposed extension. Paragraph 2 of the General Provisions of the Escrow Agreement provides that the escrow instructions may be altered or amended or modified only in writing signed

by the general partner and the escrow agent. Paragraph 2 was violated by Vanguard when the closing dates were extended without required notice. This violation was further exacerbated when First City failed, pursuant to paragraph 4 of the escrow instructions, to return the investors' money when a certificate of closing was not received prior to the Original Closing Date.

Failure to follow paragraph 4 of the escrow instructions is a clear violation of the escrow agreement. The investors as third-party beneficiaries of the escrow agreement have standing to sue for breach of contract and may be compensated for the breach. *San Pedro State Bank v. Engle*, 643 S.W.2d 450 (Tex.App.—San Antonio 1982, no writ). First City has gone to great lengths to distinguish the *San Pedro State Bank* case. However, the Court is not persuaded by their arguments. *San Pedro* is on point—the investors in this case have standing to bring suit as third-party beneficiaries.

First City also argues that it is entitled to rely on opinions of counsel pursuant to paragraph 4 of the general provisions contained in the escrow agreement which states in pertinent part that:

> The Escrow Agent shall not be liable for any act that may do omit to do hereunder as such agent, while acting in good faith and in the exercise of its own best judgment in complying with this Escrow Agreement, and any act done or omitted by it pursuant to the advice of its own attorneys shall be conclusive evidence of such good faith.

The issue in this case is not whether First City acted in good faith. The issue is breach of fiduciary duty. Even if First City acted in good faith, they breached their fiduciary duty by failing to follow the agreement. First City's argument based on paragraph 4 of the general provisions is misplaced.

B. Breach of Fiduciary Duty.

█ First City was a fiduciary of the escrowed monies entrusted to it and had a duty to comply with the terms of the escrow agreement. *Wesson v. Jefferson Savings and Loan*, 641 S.W.2d 903 (Tex. 1982); *City of Ft. Worth v. Pippin*, 439 S.W.2d 660 (Tex.1969). It is clear that First City's fiduciary duties are set forth in the escrow agreement and that, although First City may not owe a general fiduciary duty to Plaintiffs, First City does owe a fiduciary duty pursuant to the escrow agreement. First City has breached the escrow agreement and this constitutes a breach of fiduciary duty. *Id.*

First City also breached their fiduciary duty by consistently disbursing investor funds to the VGI operating account in violation of the escrow agreement. Paragraph 3 of the escrow instructions clearly states that upon receipt of a certificate of closing the funds in the escrow account shall be delivered to the partnership for distribution at the direction of the general partner. It is uncontroverted that the money was paid directly to the general partner and was not paid to the partnership for distribution at the direction of the general partner. First City argues that the general partner could have taken money from the partnership bank accounts for its own use. Although the general partner may have had the power to make that transfer, First City, pursuant to the escrow agreement, had a duty to first distribute the money to the partnership. Therefore, payment of funds directly to the VGI operating account constitutes a breach of fiduciary duty. The Court also notes that Vanguard Group Resources 1984 not VGI was the general partner for all but one of the partnerships.

First City also breached their fiduciary duty by using certain escrow funds to repay loans it had made to VGI. Proceeds of a $1,209,264 certificate of deposit in the name of the 84L–8 partnership were used to pay off a loan in the amount of $625,000 made by First City to VGI to cover an overdraft on the part of VGI to Saudi European Bank on January 30, 1985. This self-dealing clearly constitutes misuse of partnership money and breach of fiduciary duty.

### C. Aider and Abetter.

Finally, First City may have conspired with Greyhound, Northwestern, and Vanguard to assist in the movement of investors from the 84L–10 through 12 programs to the 84L–9 program. Although the Court does not use this fact as a basis for granting summary judgment on breach of fiduciary duty, the Court notes that this may constitute aiding and abetting. *See Bane v. Sigmundr Exploration Corp.*, 848 F.2d 579 (5th Cir.1988). Certainly, such a practice does not constitute routine banking practices which would have permit summary judgment for Defendant on the aiding and abetting claim. For this reasons, among others, First City's motion for summary judgment on the aiding and abetting claim must be DENIED.

### D. Loss Causation.

■ Having found that First City breached the escrow agreement and breached their fiduciary duties does not necessarily permit Plaintiffs to recover against First City. Plaintiffs must still show that First City's breach of contract and fiduciary duties constitutes the cause of their loss. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 554 (5th Cir.1981) rev'd on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548; *Bloor v. Carro, et al.*, 754 F.2d 57 (2d Cir.1985). Certainly, a breach of the escrow agreement constitutes the cause in fact of Plaintiffs' loss since, if First City had followed the escrow agreement, it would have returned the escrow funds in most of the programs when no certificate of closing was received prior to the closing date. However, the Court is of the opinion that a fact question remains regarding whether First City's breach of the contract is the *proximate* cause of Plaintiffs' loss. That issue will have to be reserved for trial.

### E. Other Claims.

Plaintiffs have made a number of claims against First City and First City made a motion for summary judgment on the fraud, DTPA, negligence and conversion claims. The Court denies First City's mo-tion for summary judgment on those claims at this time, but may reconsider depending on later developments in this case. Likewise Plaintiffs' motion on the conversion claim is DENIED. Although Plaintiffs argue that the absence of loss causation entitles them to summary judgment, the cursory briefing of that point does not permit the Court to grant a summary judgment for First City.

### IV. *Northwestern.*

■ Both Northwestern and Plaintiffs have filed cross motions for summary judgment. The Court finds that genuine issues of material fact exist which precludes granting either motion at this time. One such issue is whether Allan Esrine is an agent of Northwestern.

The Court notes that the participation interest sold by Vanguard are securities within the Securities Act of 1933 and the Securities and Exchange Act of 1934. *Doran v. Petroleum Management Corp.*, 545 F.2d 893 (5th Cir.1977). If Esrine is an agent of Northwestern, it may be liable for primary and secondary violations of Rule 10b–5 since Esrine suggested the switch of investors from the L–10 through L–12 programs to the L–9 program and since Esrine apparently helped Edward Baker devise the structure of the 1984 Vanguard programs. It is uncontroverted that Allan Esrine created the capital reserve structure used in the L–2 through L–9 programs including the use of zero coupon bonds. Allan Esrine assisted in the preparation of the confidential memorandum which allegedly misrepresented that Northwestern would approve or reject investors based solely on their creditworthiness. Allan Esrine conducted a due diligence review of Vanguard and edited the confidential memorandum for 84L–1 which was the template for all subsequent confidential memoranda. These acts may be sufficient to establish a violation on the part of Northwestern for primary liability under the securities acts.

Also, these acts clearly help Plaintiff in satisfying the three elements of the *Woodward* test for aider and abettor liability under Rule 10b–5. The evidence shows

Esrine was generally aware of his role in an improper activity and knowingly rendered substantial assistance. It is uncontroverted that Vanguard and/or Edward G. Baker violated the securities laws. Therefore, if Allan Esrine is Northwestern's agent, Northwestern aided and abetted a securities law violation. *Bane, supra; see also In Re Gas Reclamation Securities Litigation*, Fed.Sec.L.Rep. (CCH) ¶ 93,731 (S.D.N.Y. April 29, 1988) [1988 WL 45632] (holding Northwestern may be liable for substantial assistance in aiding and abetting a violation of Section 10(b) due to unlicensed activities of Allan Esrine).

Northwestern contends they are entitled to summary judgment since they are not a controlling person of Vanguard. In this respect, Northwestern's motion looks good, but due to the activities of Allan Esrine, who may be Northwestern's agent, the Court will reserve judgment on the control person issue.

Northwestern also prays for summary judgment that it has no liability under the Texas Deceptive Trade Practices' Act or Chapter 21 of the Texas Insurance Code. For the reasons stated by Judge Sand in *In Re GRI litigation, supra,* the motion for summary judgment by Northwestern regarding insurance code violations is DENIED. The motion for judgment on the DTPA claims is DENIED.

Northwestern also asserts that they are entitled to summary judgment on the conspiracy claims. Although Northwestern's motion for summary judgment looks good since the five elements of *Massey v. Armco Steel*, 652 S.W.2d 932, 934 (Tex.1983) may not have been fulfilled, the Court will reserve judgment on that claim for a later date. In sum, the motions for summary judgment regarding Northwestern are denied but the Court might direct a verdict in favor of Plaintiffs against Northwestern if the evidence adduced at trial shows:

(1) Allan Esrine was the agent of Northwestern, and

(2) Northwestern's actions were the proximate cause of Plaintiffs' loss.

## V. *Integration.*

Plaintiffs have filed a motion for rescission of the investor notes based upon integration, both "vertical" and "horizontal," of the twelve Vanguard programs. They ask that indemnity agreements with Northwestern cancelled. The motion for summary judgment is DENIED for three reasons.

■ First, there are genuine issues of material fact, regarding whether vertical integration of the Vanguard 1984 offerings is proper. Regulation D, Rule 502(a), 17 C.F.R. § 230.502(a) sets out the criteria for integration:

A. whether the sales are a part of a single plan of financing;

B. whether the sales involved issuance of the same class of securities;

C. whether the sales have been made at or about the same time;

D. whether the same type of consideration is received; and

E. whether the sales are made for the same general purpose.

Texas has followed the Security and Exchange Commission (Federal) Rule. *See* Exhibit 3 Plaintiffs' motion for summary judgment based on integration. The Court finds that, although the Vanguard 1984 Limited Partnerships involved the issuance of the same class of securities, made at or about the same time, for the same type of consideration, genuine issues of material fact exist regarding whether the sales are part of a single plan of financing (each of the partnerships involve different oil and gas properties), and whether the sales were made for the same general purpose (again, different properties are involved). Plaintiffs would also have the Court adopt a new theory of liability known as horizontal integration leading to a securities law violation. The Court is not persuaded to adopt such a new and novel theory.

■ Second, summary judgment for Plaintiffs on the integration claims is not proper since the remedy sought is rescission. Rescission as a remedy for violations of securities laws requires proof that the investors' loss was proximately caused by the Defendant's misconduct. *Rousseff*

*v. E.F. Hutton Co.*, 843 F.2d 1326, 1328–9 (11th Cir.1988). Plaintiff has not presented the Court with adequate summary judgment evidence to find as a matter of law that Plaintiffs' losses were proximately caused by the alleged integration of the Vanguard 1984 programs and securites law violations. A question of the existence or non-existence of proximate cause is a question for the trier of fact. The Court also notes that recession may not be a proper remedy since the parties cannot all be returned to the position they occupied before the transaction that is being rescinded took place. *Leonard v. Eskew*, 731 S.W.2d 124, 131 (Tex.App.—Austin 1987, writ ref'd n.r.e).

Third, the Court finds that Plaintiffs' claims based on integration under the Texas Securities Act may be misplaced. The notes which Plaintiffs seek to invalidate have choice of law provisions. The Court must give credence to those clauses. The notes in the L–8 and L–9 programs with Greycas must be decided under Arizona law. The notes in the earlier programs, L–1 through L–8, must be decided under New York law. The Court finds that rescission based upon Texas law would be incorrect since the Court must use either federal law or that given in the choice of law provision of the investor notes.

For these reasons, Plaintiffs' motion for summary judgment based in integration is DENIED. The Court notes that the lack of loss causation pervades this entire case and may prevent judgment in the favor of Plaintiffs on any of their claims (even the DTPA claims where the standard is producing, not proximate, cause). Since Plaintiffs have failed to show in any of their motions for summary judgment that, as a matter of law, proximate causation exists, summary judgment for Plaintiffs is DENIED except as noted above. *See Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (failure on the part of one party to refute the absence of evidence where that party bears the burden of proof mandates summary judgment for movant).

VI. *Conclusion.*

By separate order to be issued shortly the Court will rule on the question of lender liability as presented by the motions for summary judgment by Chrysler Capital Corporation and Greycas. The Court does note, however, at this time that Chrysler Capital's motion has merit while Greycas' motion has some serious problems due to their role in the switch of investors from the L–10 through 12 programs to the L–9 program.

The Court cautions counsel that no additional briefing is necessary nor warranted. The Court finds the state of the record to be complete and in the unlikely event that additional briefing is necessary the Court will issue an appropriate order or suggestion.

Counsel have suggested to the Court that this case should take approximately four to six weeks to try. If Plaintiffs' counsel are willing to narrow the issues to one or two causes of action a shorter trial and, consequently, a nearer trial date may be assigned. Counsel may, if they so choose, file a motion to amend their complaint to narrow and limit the number of issues. Of course, counsel are free to plead as many as issues as they wish and the Court does not mean to limit the issues except as insofar as summary judgment is granted on certain questions.

IT IS SO ORDERED.