OVERSEAS PRIVATE INVESTMENT
CORPORATION, Plaintiff and
Counter–Defendant,

v.

INDUSTRIA de PESCA, N.A., INC., et al.,
Defendants and Counter–Plaintiffs.

GEMINI CAPITAL GROUP, INC., dba
Gemini Tuna Fleet Management
Group, Counter–Plaintiff,

v.

OVERSEAS PRIVATE INVESTMENT
CORPORATION, Counter–
Defendant.

Civil Action No. 95–1818 (PLF).

United States District Court,
District of Columbia.

March 22, 1996.

Andrew H. Marks, Robert D. Rowe, Washington, D.C., for OPIC.

E. Alex Blanton, Michael Joseph, Dyer, Ellis, Joseph & Mills, Washington, DC, for Defendants and Counter–Plaintiffs.

## OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on the motion of plaintiff and counter-defendant Overseas Private Investment Corporation ("OPIC") to dismiss the counterclaims brought by the defendants and counter-plaintiffs Industria de Pesca, N.A., Inc., Robert A. Grant, John F. Gois, Joseph Gois and Diane Grant and by Gemini Capital Group, Inc., who was not an original party to this action. The Court has carefully considered the excellent briefs of the parties and heard oral argument.

## I.  BACKGROUND

The case arises out of the financing by OPIC of the acquisition and operation of a

fleet of tuna vessels by the Yap Fishing Corporation ("YFC") in the Federated States of Micronesia. YFC has three corporate shareholders: defendant Industria de Pesca, N.A., Inc. ("IDP"), a California corporation; the Yap Economic Development Authority ("YEDA"); and National Fisheries Corporation ("NFC"), which is wholly owned by the Federated States of Micronesia. IDP, in turn, has three individual shareholders, all of whom also are defendants in this case: Robert Grant, John Gois and Joseph Gois.[1] IDP owns 25 percent of YFC, while the two Yapese sponsors, YEDA and NFC, own the remaining 75 percent. The structure and terms of the venture are contained in two agreements signed by all the parties: the Finance Agreement ("FA") and the Project Completion Agreement ("PCA"). YFC and Gemini also entered into Vessel Management Agreements ("VMA") governing the operation of the tuna vessels.

In 1992, OPIC guaranteed a $9 million loan to YFC to provide financing for the tuna vessels. As a part of the financing arrangement, OPIC required Robert Grant, John Gois and Joseph Gois as individual sponsors to guarantee the OPIC loan and to offer their personal assets as collateral. Finance Agreement at 1–2; Project Completion Agreement ¶ 2(d). The gravamen of OPIC's complaint against IDP, Robert Grant, John Gois and Joseph Gois is that when OPIC called upon defendants to advance the money to guarantee the loan as required under the PCA they breached their respective obligations. IDP was responsible for $1.7 million of YFC's obligations, while the individual sponsors had agreed to pay lesser amounts.

Defendants have asserted five counterclaims against OPIC: release, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, breach of duty of good faith, and tortious interference with contract. The defendants do not seek money damages but rather recoupment or set-off against any judgment ultimately obtained by OPIC against them. Gemini, which is also owned by Robert Grant, John Gois and Joseph Gois, contracted as vessel manager to operate the

tuna vessels for YFC. It joins only the tortious interference counterclaim and seeks money damages against OPIC.

## II. DISCUSSION

### A. Release

■ Defendants/counter-plaintiffs assert as their first cause of action a claim for "release." While release may be pleaded as an affirmative defense, there is no independent cause of action for "release." Defendants now claim that they are really seeking a declaratory judgment on the issue to preserve their rights if plaintiff's claims should be dismissed. Nowhere in their counterclaim, however, do they expressly request a declaratory judgment, or even cite the Declaratory Judgment Act, 28 U.S.C. § 2201. Count One therefore will be dismissed for failure to state a claim.

### B. Breach of Fiduciary Duty

■ OPIC moves to dismiss the second counterclaim alleging breach of fiduciary duty on the ground that no fiduciary relationship arises from a contract between a debtor and a creditor. It maintains that the PCA is a standard financing agreement between OPIC, as lender to YFC, and the defendants as the guarantors of OPIC's loan, and even defendants acknowledge that it would be rare for a lender to have a fiduciary relationship to a borrower or guarantor of a loan. OPIC maintains that the PCA is clear by its terms and nowhere imposes on OPIC any special duty of trust or any duty not to impair collateral. OPIC, it says, was entitled to negotiate with its borrower YFC without breaching any contractual rights or obligations or any implied fiduciary duty to others.

Defendants/counter-plaintiffs, on the other hand, maintain that OPIC assumed a special relationship of trust and confidence with IDP and the individual sponsors because it retained in the PCA the right to approve changes in the business plan and approved the disposition of two vessels in violation of the plan. OPIC also retained the right and

---

**1.** On December 22, 1995, the Court denied the motion to dismiss filed by Diane Grant, Robert Grant's wife, and she remains a defendant in the case.

obligation to approve YFC's termination of Gemini and the right to compel defendants to infuse additional capital into the venture. Defendants argue that OPIC breached its fiduciary duty to IDP and the individual sponsors when it approved YFC's termination of its agreement with Gemini without cause and when it permitted two of the four vessels that served as collateral for the loan to be sold at less than fair market value, thus impairing the collateral.

The Court is not persuaded that defendants/counter-plaintiffs have alleged the basis for finding a fiduciary relationship. The relationship between a debtor and a creditor in a loan transaction is "ordinarily a contractual relationship . . . and is not fiduciary in nature." *Yousef v. Trustbank Savings, FSB*, 81 Md.App. 527, 568 A.2d 1134, 1138 (1990); *see Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir.1988); *Reid v. Key Bank of Southern Maine*, 821 F.2d 9, 16–18 (1st Cir.1987). Defendants have identified no special circumstances here beyond the kind that would normally exist when OPIC or any other commercial lender finances a complicated multi-party transaction. Nor does anything in the PCA itself support the argument that OPIC assumed any special relationship of trust or confidence in this particular case. Indeed, the relevant provisions of the PCA are to the contrary. *See* Project Completion Agreement ¶¶ 2(d), 3. Count Two of the counterclaim will be dismissed.

### C. Aiding and Abetting

Defendants/counter-plaintiffs next argue that OPIC aided and abetted a breach of fiduciary duty that YFC's majority shareholders and joint venturers, YEDA and NFC, owed to the minority shareholder, IDP. Specifically, they argue that YFC sold two of the tuna vessels at less than their fair market value, that it terminated the VMA between YFC and Gemini without good cause, and that it restructured the business venture without IDP's consent. They argue that because these actions could not have been taken without the express approval of OPIC and because OPIC not only acquiesced in but also expressly approved of these transactions, OPIC is liable for aiding and abetting a breach of fiduciary duty.

The parties agree that the gravamen of an aiding and abetting claim is that the alleged aider and abettor knowingly participated in and substantially assisted the fiduciary's breach of trust. *Tavoulareas v. Piro*, 759 F.2d 90, 137 (D.C.Cir.), *vacated in part on other grounds*, 763 F.2d 1472 (D.C.Cir.1985); *see Bane v. Sigmundr Exploration Corp.*, 848 F.2d 579, 581 (5th Cir. 1988); *S & K Sales Co. v. Nike Inc.*, 816 F.2d 843, 848 (2d Cir.1987). Even assuming a breach of fiduciary duty by YEDA and NFC, however, it is not clear that defendants have alleged any affirmative conduct by OPIC that substantially assisted the alleged breach of duty by YEDA and NFC. Defendants allege that OPIC should have but did not veto the actions constituting the alleged breach. As the Seventh Circuit has noted, however, "assisting, and failure to prevent, are not the same thing." *EEOC v. Illinois*, 69 F.3d 167, 170 (7th Cir.1995). OPIC's mere failure to veto the sale of the vessels or the termination of the VMA does not rise to the level of substantial assistance. Neither do defendants' vague assertions that OPIC was legally entitled to veto these actions under the PCA constitute knowing substantial assistance in the breach of a fiduciary duty.

Defendants' counterclaim, however, could be read to allege that OPIC affirmatively approved or was legally required to approve the actions constituting the alleged breach, namely the sale of the vessels and the termination of the VMA, and that it affirmatively participated in restructuring the loan. While such affirmative activity might, for the purposes of pleading, constitute more than a mere failure to act, defendants have not alleged the sort of activity that would constitute substantial assistance in the breach of a fiduciary duty. They point to activity that OPIC was fully entitled to take under the PCA and that was the kind of behavior a lender would ordinarily be expected to take to protect its own interests. *See Bane v. Sigmundr Exploration Corp.*, 848 F.2d at 581–82 (bank's extension of loans, taking of security interest and authorizing the use of bank documents did not constitute substan-

tial assistance to violators of securities laws). Count Three of the counterclaim therefore will be dismissed.

### D. Breach of the Covenant of Good Faith

■ Defendants next assert that OPIC's actions violated the covenant of good faith and fair dealing implied in any contract under District of Columbia law. Specifically, they point to OPIC's having permitted YFC to sell two vessels, to terminate Gemini and to restructure the venture without IDP's consent, as well as OPIC's own demand for payment made to defendants.

With respect to OPIC's demand for payment, the dispositive response is found in our Circuit's opinion in *Tymshare, Inc. v. Covell*, 727 F.2d 1145 (D.C.Cir.1984), in which the court pointed out that the intent of the parties to a contract must control and that an implied duty of good faith cannot supplant the terms actually contained in a contract. In particular, now-Justice Scalia stated: "We cannot imagine . . . entertaining a claim that a demand for payment of a demand note has been made 'in bad faith.' " *Id.* at 1153; *see Continental Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir.1992); *Obelisk Corp. v. Riggs National Bank*, 668 A.2d 847, 853 n. 4 (D.C.1995). The PCA expressly permits OPIC to make a demand for payment on defendants based on the occurrence of an Event of Default, and the Finance Agreement defines a receivership as an Event of Default. Project Completion Agreement ¶ 2(d)(1)–(2); Finance Agreement § 7.01(j)–(k). Thus, the receivership imposed by the Yap State Court on February 25, 1995 gave OPIC a contractual right to demand payment from the defendants under the PCA and the FA. The very nature of this right prevents defendants from alleging a breach of good faith based on OPIC's decision to demand payment.

■ With respect to the allegations that OPIC authorized or otherwise permitted YFC to undertake actions such as the sale of the vessels and the termination of the VMA that deprived defendants of their investment in the venture, the case is not so clear. While the PCA gives OPIC "sole discretion" to approve or disapprove such actions, "the mere recitation of an express power is not always the test" of whether there is an implied good-faith limitation on a party's power to act under a contract. *Tymshare, Inc. v. Covell*, 727 F.2d at 1153. Defendants allege that it was understood between the parties that Gemini would serve as vessel manager and that OPIC would use its veto power to prevent the Yapese majority shareholders of YFC from destroying defendants' interests in the venture. While this allegation may or may not withstand scrutiny when the facts are fully explored, reading the counterclaim in the light most favorable to defendants, as the Court must do at this stage, the Court cannot preclude the possibility that defendants might be able to make out a claim of a breach of covenant of good faith and fair dealing. Accordingly this claim will not be dismissed.

### E. Tortious Interference with Contract

■ Finally, defendant/counter-plaintiff IDP and counter-plaintiff Gemini bring a claim against OPIC for tortious interference with contract. This claim is based on the February 1995 termination by YFC of the VMA between YFC and Gemini. The parties agree that a tortious interference claim requires an intentional procurement of a breach of a contract. *See Curaflex Health Services, Inc. v. Bruni*, 899 F.Supp. 689, 694 (D.D.C.1995). Assuming that YFC breached the VMA, the question is whether OPIC intentionally procured that breach.

■ Defendants allege no facts that support the assertion that OPIC intentionally procured the termination of the VMA. While the counterclaim asserts that OPIC requested a modification of the VMA as part of the refinancing plan, there is no allegation that the modification ever occurred. While there may be factual issues, as defendants allege, as to whether OPIC negotiated with the Yapese behind defendants' backs, restructured the loan and approved the termination, even if these facts were proven defendants would not have demonstrated the intentional procurement of a breach of contract. Defendants have not even alleged that OPIC harbored any intent to oust Gemini or IDP from the venture. Moreover, as

this Court previously has held, under District of Columbia law any interference with contract must be an "improper" interference, that is, one that is not legally justified. *Curaflex Health Services, Inc. v. Bruni*, 899 F.Supp. at 695. IDP has failed to plead any conduct by OPIC that was improper under the PCA and thus has failed to state a claim.

■ Even if defendants had stated a claim for tortious interference, this Court lacks subject matter jurisdiction over Gemini's claim. While IDP's claims all sound in recoupment, Gemini's claim is for money damages. Gemini concedes that the Federal Tort Claims Act expressly does not authorize suits against the United States for tortious interference with contract. 28 U.S.C. § 2680(h). It argues, however, that its tortious interference claim is a maritime claim with respect to which the United States has waived sovereign immunity under the Suits in Admiralty Act ("SAA"), 46 U.S.C. §§ 741–752. It maintains that the VMA, a contract between Gemini and YFC to manage the vessels leased by YFC at sea, is a maritime contract and that tortious interference with a maritime contract necessarily is a maritime tort under the SAA for which the United States may be sued. OPIC counters that because the alleged interference with the VMA took place on land and not on navigable waters, the SAA does not apply.

The Ninth Circuit's decision in *J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139 (9th Cir.1995), disposes of the issue. While there has been some debate in the courts and in the literature over whether it is sufficient to establish admiralty jurisdiction if a land-based tort has a direct effect on maritime concerns or whether the tort itself must take place on navigable waters, the Ninth Circuit concluded, in factual circumstances similar to these, that the test for admiralty jurisdiction under the SAA requires *both* that the injury occur on navigable waters *and* that the activity have a connection to maritime commerce. *J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d at 143; *see Grubart v. Great Lakes Dredge & Dock,* ——

U.S. ——, ——, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995); *cf. Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 254, 261, 93 S.Ct. 493, 497–98, 501, 34 L.Ed.2d 454 (1972). As in *Lauritzen*, the parties here agree that the contract at issue had a substantial connection to maritime commerce and that its breach had an effect at sea. Like the Ninth Circuit, however, this Court concludes that admiralty jurisdiction is lacking where the tort occurs, as the parties concede it did here, solely on land. *See Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 289–90 (5th Cir.1989). The contractual relations in *Lauritzen* were quite similar to those at issue in this case, and the Court sees no reason to depart from the Ninth Circuit's analysis. The government not having waived sovereign immunity for such torts, either in the Federal Tort Claims Act or in the SAA, the Court concludes that it lacks jurisdiction over Gemini's claim for tortious interference with contract.[2]

In reaching this conclusion, the Court necessarily rejects the "impact test" adopted by the First Circuit in *Carroll v. Protection Maritime Ins. Co.*, 512 F.2d 4 (1st Cir.1975). There is no controlling law in this Circuit, since the Court does not read *Canadian Transport Co. v. United States,* 430 F.Supp. 1168 (D.D.C.1977), or Judge Robb's opinion for the Court of Appeals affirming it in *Canadian Transport Co. v. United States,* 663 F.2d 1081 (D.C.Cir.1980), as reaching or deciding, either expressly or implicitly, the question posed here.

## III. CONCLUSION

For all of the foregoing reasons, the Court will grant OPIC's motion to dismiss Counts One, Two, Three and Five for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., and Count Five, as it relates to Gemini, for lack of subject matter jurisdiction under Rule 12(b)(1), Fed.R.Civ.P. Count Four, alleging breach of the covenant of good faith and fair dealing, will not be dismissed. Accordingly, it is hereby

---

2. In view of this conclusion, the Court need not address the discretionary function exception to

sovereign immunity argued by the parties.

ORDERED that OPIC's motion to dismiss is GRANTED in part and DENIED in part. Counts One, Two, Three and Five of the counterclaim are DISMISSED.

SO ORDERED.