**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Appellee,**

v.

**M.E. DEALY, et al., Defendants,**

**William H. Taylor, III, Defendant–Appellant.**

**No. 89–6064.**

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1990.

Fritz Barnett, Glickman & Barnett, Houston, Tex., for William H. Taylor, III.

A. Rex Jasper & Connye P. Jasper, Lubbock, Tex., pro se.

Raymond C. Kerr, Pope, Shomake, Selwyn, Aguren & Kerr, Houston, Tex., for N.S. Myers, H.G. Myers, J.E. Rhode, R.M. Rhode, W.H. Taylor, III, L. Taylor, L.J. Villarreal and Y. Villarreal.

Michael L. Parham and Paul C. Wolf, Winstead, McGuirem Sechrest & Minick, Dallas, Tex., for plaintiff-appellee.

Before RUBIN, POLITZ, and BARKSDALE, Circuit Judges.

POLITZ, Circuit Judge:

We have before us the appeal by William H. Taylor, III, of a summary judgment rendered against him in favor of Insurance Company of North America (INA). We must also give due consideration to an adverse judgment against Leslie Taylor, the deceased wife of William Taylor, who died before service of process was effected. We dismiss the claims against Leslie Taylor and affirm the judgment against William H. Taylor, III.

### Background

On December 28, 1984 William H. Taylor, III and his wife Leslie Taylor agreed to purchase a $20,000 limited partnership in the Overlord IV 1984 Oil and Gas Drilling Program (Overlord). Overlord was a Tennessee limited partnership and tax shelter syndicated by its operating general partner, Commonwealth Enterprises, Inc. under a Private Placement Memorandum (PPM).

As did many of the investors in Overlord, the Taylors paid $5,000 cash, and signed a promissory note for $15,000 payable to Overlord over several years. Commonwealth borrowed $15,000 from International Capital Resources, Inc. (ICR), securing the loan with the Taylors' promissory note. INA guaranteed the promissory note with a surety bond payable to ICR in case of default by the Taylors, and the Taylors agreed to indemnify INA for any payments it made as surety. ICR assigned its rights in the promissory note and the surety bond to Credit Lyonnais.

The Taylors made their first installment payments but stopped paying after Commonwealth filed for bankruptcy. Credit Lyonnais, the assignee of the note, made demands upon INA as surety, for payment of overdue funds. INA paid Credit Lyonnais and then demanded reimbursement from the Taylors per the indemnification agreement.

INA filed suit in the Southern District of Texas against 16 defendants, invoking diversity jurisdiction and seeking reimbursement for payments made on Overlord surety bonds. William Taylor was served and jointly filed an answer with two other codefendants. Leslie Taylor died prior to the time suit was filed and therefore service was never made on her, nor has it been made on her estate. Notwithstanding, counsel filed responsive pleadings for the rest of the codefendants, including Leslie Taylor.

INA moved for summary judgment against all defendants to which each of the defendants, again purportedly including Leslie Taylor, responded. A hearing was held on the motion, and summary judgment was entered on January 18, 1989, against all defendants except William Taylor. Judgment was rendered against Leslie Taylor. INA concedes that the judgment omitted William Taylor because of an error on its part concerning which of the Taylors had died.

Undaunted, William Taylor continued with discovery. In due course it dawned upon counsel for INA that a live defendant had not been cast in judgment but that a deceased defendant had. It moved to substitute William Taylor in the stead of Leslie Taylor in the judgment as a "misnomer which is correctable under Fed.R.Civ.P. 60(a)." It also then sought to correct the name of another defendant from Norman Dealy to Norma Dealy and it requested prejudgment interest.

Taylor opposed the INA motion with a pleading entitled "Defendant Bill Taylor's Response in Opposition to Plaintiff's Motion to Amend Judgment and Supplemental Response to Plaintiff's Motion for Summary Judgment." Taylor attached affidavits and a transcript excerpt to his pleading. The court entered an amended final judgment substituting William H. Taylor, III for Leslie Taylor. Taylor timely appealed.

### Analysis

We note *sua sponte* a threshold jurisdictional question. *Click v. Abilene Nat'l Bank*, 822 F.2d 544 (5th Cir.1987). Do we have appellate jurisdiction when the defendants include a predeceased codefendant whose estate was never duly served, and on whose behalf counsel made an unauthorized appearance, when there has been neither a judgment against that defendant nor a dismissal of the complaint, and no Fed.R. Civ.P. 54(b) certificate has issued? We answer in the affirmative.

■ We have appellate jurisdiction only over final judgments, 28 U.S.C. § 1291, and over certain interlocutory decrees and orders, none of which are applicable herein. We also have jurisdiction over an otherwise nonfinal judgment which either does not address the demands against all of the parties or does not address all of the issues against a party, if the district court issues the dual certification prescribed by Fed.R. Civ.P. 54(b). *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218 (5th Cir. 1990) (en banc). No such certification has been made herein. Is that failure fatal to our jurisdiction? We hold that it is not.

Leslie Taylor died before being served and her estate has not been made a party herein. When the failure of service within 120 days of filing and the failure to make a showing of good cause for nonservice came to the court's attention, it should *sua sponte* have dismissed the suit without prejudice, pursuant to the directive of Fed. R.Civ.P. 4(j). The district court could and should have done so on its own motion, if necessary.

■ Because Leslie Taylor was never properly before the district court it did not have the requisite competence to render a judgment against her. In diversity cases capacity to sue and be sued is determined by the law of the individual's domicile. Fed.R.Civ.P. 17(b). Leslie Taylor was a domiciliary of Texas at the time of her death. Under Texas law a judgment against a party who died before service of process and whose estate has not been made a proper party is void. *Edens v. Grogan Cochran Lumber Co.*, 172 S.W.2d 730 (Tex.Civ.App.1943). The appearance for the decedent ostensibly made by counsel was without effect. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The instant case is analogous to *FSLIC v. Tullos–Pierremont*, 894 F.2d 1469 (5th Cir.1990). In that case, we reaffirmed the holding of *Nagle v. Lee*, 807 F.2d 435 (5th Cir.1987), that unserved defendants are not parties for purposes of Rule 54(b) and a judgment does not lack the finality necessary for appeal merely because claims against unserved defendants are unresolved. The *Tullos–Pierremont* court, noting that 28 U.S.C. § 1291 has long been interpreted in a "practical rather than a technical manner," 894 F.2d at 1475 (citations omitted), and that "housekeeping or ministerial actions may be legitimately regarded as *de minimis*," *id.* (citations omitted), dismissed the appeal rather than order what it saw as an unnecessary remand for mandatory dismissal pursuant to Rule 4(j). We do likewise. The demands against Leslie Taylor are dismissed as prescribed by Fed.R.Civ.P. 4(j).

*The Amended Judgment.*

■ Taylor argues that the district court improvidently amended its final judgment by changing Leslie Taylor's name to his. This, he asserts, was beyond the discretion of the district court under Fed.R.Civ.P. 60(a). Were this in fact the substitution of one party for another, without more, then the Rule 60(a) power to remedy "[c]lerical mistakes in judgments, orders or other parts of the record ... arising from oversight or omission" would have been exceeded. However, the record reflects that Taylor treated INA's motion to amend as one for summary judgment, not for merely the correction of a clerical error. INA and the court were free to do likewise. Just as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be treated as a Rule 56 motion for summary judgment in an appropriate setting, so, too, may the instant motion by INA. *Cf.* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1029 (1987) ("The federal rules are designed to discourage battles over mere form and to sweep away needless procedural controversies ...," discussing Fed.R.Civ.P. 1 mandate to construe Rules "to secure the just, speedy, and inexpensive determination of every action."). Concluding that the motion to amend was in substance, if not form, a motion for summary judgment, and that the district court treated it as such, we turn to the substantive merits of Taylor's appeal.

*Summary Judgment.*

Summary judgment is appropriately granted by a district court when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The standard of appropriateness of summary judgment for this court is the same as for the district court. *Nunez v. Superior Oil Co.,* 572 F.2d 1119 (5th Cir.1978). All inferences are drawn from the evidence in the light most favorable to the nonmoving party. *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 873 (5th Cir.1984). We have taken into account both the evidentiary materials submitted by Taylor before and those submitted after the filing of the INA motion to determine whether the evidence he submitted and the inferences drawn from it suffice to withstand a summary judgment.

■ Taylor asserts that he is not liable on the indemnification agreements because they are contracts related to a securities fraud perpetrated by Commonwealth and INA as its controller, or aider and abettor, for the purposes of Overlord. Such contracts, he asserts, cannot be enforceable under federal or state law. We are not persuaded. Taylor alleges numerous violations of the Securities Act of 1933 §§ 12(1), (2), & 15, 15 U.S.C. §§ 77l, 77o, the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j, and SEC Rule 10b–5, promulgated pursuant to it, 17 C.F.R. 240.10b–5, and also of Texas securities laws paralleling the federal registration requirements. We disagree. Taylor may have described a complex securities fraud perpetrated on the Overlord investors but in response to the motion which was treated as a motion for summary judgment he has offered no evidence that INA was a party to the fraud or a coconspirator in it. He does contend that INA knew of prior securities-law violations by Overlord or its principals, but the mere fact that INA may have had such knowledge is not sufficient to make it an aider or abettor. He may have a right to recover from Overlord, but he has not shown the existence of a genuine issue of material fact sufficient to warrant holding INA either as a coconspirator or as an aider or abettor.

*Seller Liability.*

■ Taylor alleges that INA was a seller in the Overlord project, in violation of section 12 of the Securities Act of 1933. We disagree as a matter of law. "At the very least, [the] language of section 12(1) contemplates a buyer-seller relationship not unlike traditional contractual privity." *Pinter v. Dahl,* 486 U.S. 622, 642, 108 S.Ct. 2063, 2076, 100 L.Ed.2d 658, 679 (1988).

INA had dealings with Commonwealth only in the context of ordinary business transactions, and minimal contact with the Overlord investors. The *Pinter* court declined to restrict section 12 to merely the owner of the security but nonetheless warned against a reading of section 12(1) so broad that "it might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) strict liability for rescission." *Id.* at 651, 108 S.Ct. at 2081, 100 L.Ed.2d at 684–85.

We applied a two-step *Pinter*-seller inquiry to claims under section 12(2) in *Abell v. Potomac Insurance Co.*, 858 F.2d 1104 (5th Cir.1988), *vacated on other grounds sub nom., Fryar v. Abell,* — U.S. —, 109 S.Ct. 3236, 106 L.Ed.2d 584, *cert. denied,* — U.S. —, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989), inquiring: (1) who passed title to the purchaser or solicited the title-passing transaction; and (2) from whom did the plaintiff buy the security? In that case, a law firm that helped to prepare the offering statement was not held to be a section 12(2) seller. The minimal involvement of INA in the case at bar does not satisfy the *Pinter* inquiry.

*Controller Liability.*

■ Section 15 of the Act imposes joint and several liability upon a controlling person for the acts of those under his control. 1 T. Hazen, *The Law of Securities Regulation* § 7.7 (1990) (footnote omitted). Taylor asserts that INA's link with Commonwealth suffices to impute controller liability to INA. This contention is untenable.

Absent the more typical allegations of control, *e.g.,* voting rights or managerial power, *cf.* SEC Rule 405, 17 C.F.R. 230.405, we may apply common law agency principles in determining the scope of knowledge of reputed wrongdoing imputable to INA. *Paul F. Newton & Co. v. Texas Commerce Bank,* 634 F.2d 1355 (5th Cir.1980). Here an agent of Commonwealth might have qualified as a dual agent under Texas law solely with respect to the filing of applications and collection of fees for INA, *Hunt v. State,* 737 S.W.2d 4 (Tex.Ct.App.1987), but the record is devoid of any indication of

agency authority beyond this virtually clerical function. We are unwilling to extend section 15 liability to an investment bond insurer on such tenuous grounds. *Accord Harrison v. Enventure Capital Group, Inc.,* 666 F.Supp. 473 (W.D.N.Y.1987).

*Section 10(b) and Rule 10b–5 claims.*

■ Taylor finally asserts an Exchange Act aider and abettor claim against INA quite similar to the section 12 claim *supra.* We stated the test for such a claim in *Bane v. Sigmundr Exploration Corp.,* 848 F.2d 579, 581 (5th Cir.1988): "There must have been a securities violation by the primary party; the aider and abettor must have had a 'general awareness' of its role in a Rule 10b–5 violation; and the aider and abettor must have 'knowingly and substantially assisted' in the Rule 10b–5 violation." Significantly, in that case we noted that the routine extension of a loan does not amount to substantial assistance, and that "if the evidence shows no more than a transaction constituting the daily grist of the mill, we would be loathe to find 10b–5 liability without clear proof of intent to violate the security laws." *Id.* (citing *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 (5th Cir.1975)). As we have noted throughout the analysis of Taylor's claims, the INA–Overlord link arose in an ordinary investment business context, with no indication of the clear proof of intent we require for liability in such situations.

We find no genuine dispute as to a material fact and conclude that INA is entitled to judgment against William H. Taylor, III as a matter of law.

The claims against Leslie Taylor are DISMISSED and the judgment against William H. Taylor, III is AFFIRMED in all respects.