Glenn DAMATO, Deborah Damato, Ann De La Garza, et al., Plaintiffs– Appellants,

v.

John HERMANSON, First Commercial Financial Group, Inc., et al., Defendants–Appellees.

Nos. 97–1975, 97–1976.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1998.*

Decided Aug. 17, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 15, 1998.

---

* Following oral argument, the court invited the Commodity Futures Trading Commission ("CFTC") to submit an amicus brief outlining the Commission's position on the issues presented for decision.

Edward T. Joyce (argued), Joyce & Associates, Chicago, IL, for Plaintiffs–Appellants in No. 97–1975.

Edward T. Joyce (argued), Arthur W. Aufmann, Rowena T. Paras, Joyce & Associates, Chicago, IL, for Plaintiffs–Appellants in No. 97–1976.

Scott E. Early (argued), Joan M. Kubalanza, Jeffery S. Norman, Todd A. Strother, Foley & Lardner, Chicago, IL, for First Commercial Financial Group, Inc., in No. 97–1975.

David A. Genelly, Robert A. Vanasco, Megan A. O'Brien, Fishman & Merrick, Chicago, IL, Scott E. Early (argued), Joan M. Kubalanza, Jeffery S. Norman, Todd A. Strother, Foley & Lardner, Chicago, IL, for First Commercial Financial Group, Inc., in No. 97–1976.

Susan A. Berkowitz, Commodity Futures Trading Commission, Chicago, IL, Daniel Waldman, Commodity Futures Trading Commission, Office of the General Counsel, Washington, DC, for Amicus Curiae.

Before BAUER, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiffs filed a complaint against several defendants alleging violations of various state and federal laws in connection with the plaintiffs' purchases of interests in a commodity pool operated by defendant Buff Hoffberg. This appeal involves only the district court's dismissal of Count VI of the plaintiffs' second amended complaint. In that count, the plaintiffs alleged that defendant First Commercial Financial Group, Inc. violated the Commodity Exchange Act

("CEA"), *see* 7 U.S.C. §§ 1–25, by aiding and abetting Hoffberg in his scheme to defraud the plaintiffs.[1] For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts[2]

The plaintiffs in this case are a group of investors in the Echo One Trading Pool ("the Echo One pool"), a commodity pool[3] operated by defendant Buff Hoffberg. The plaintiffs purchased limited partnership interests in the Echo One pool under the impression that Hoffberg would use their money to trade in the commodities markets. Hoffberg, however, operated the Echo One pool as a classic Ponzi scheme: He paid so-called "profits" to current investors with monies invested by new customers. Out of the $2.2 million invested in the Echo One pool, only $250,000 was lost due to trading in the commodities markets; the balance was either converted by Hoffberg for his own use or paid out to other investors as "profits."

In furtherance of his scheme, Hoffberg enlisted the services of defendant John Hermanson. Hermanson was the president of First Trading Group ("FTG"), a subsidiary of defendant First Commercial. FTG solicits and accepts orders for the purchase or sale of commodities for future delivery on behalf of First Commercial. In 1989, Hoffberg opened a trading account in the name of Echo Trading at First Commercial (through Hermanson and FTG). After Hoffberg opened the account, he made a loan to Hermanson from monies that the plaintiffs intended to be invested in Echo One. In return, Hermanson prepared a false confirmation statement to be sent to current and prospective investors which showed inflated balances in the Echo One pool. This confirmation statement was issued on First Commercial letterhead. These allegations concerning Hermanson's and First Commercial's roles in Hoffberg's scheme are at the heart of the issues raised in this appeal.

### B. Proceedings in the District Court

As we noted earlier, this appeal concerns only the plaintiffs' allegations that First Commercial violated the CEA by aiding and abetting Hoffberg in the operation of his fraudulent scheme. Specifically, in Count VI of their second amended complaint, the plaintiffs alleged that Hoffberg violated §§ 4b and 4o, 7 U.S.C. §§ 6b & 6o,[4] of the

1. After it had dismissed all of the plaintiffs' claims against First Commercial, the district court entered final judgment with respect to First Commercial pursuant to Federal Rule of Civil Procedure 54(b). *On appeal, the plaintiffs challenge only the district court's dismissal of their claim against First Commercial predicated on aider and abettor liability under the CEA.*

2. Because this case comes to us on appeal from the dismissal of the complaint, we take the facts as alleged in the complaint as true for purposes of our review. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 661 n. 1 (7th Cir.1998).

3. A "commodity pool" is an investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity futures or options contracts.

4. Those sections provide as follows:

§ 6b. Fraud, false reporting, or deception prohibited
　(a) Contracts designed to defraud or mislead; bucketing orders

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—
　　(i) to cheat or defraud or attempt to cheat or defraud such other person;
　　(ii) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to

CEA by fraudulently inducing the plaintiffs to purchase and retain their interests in the Echo One pool and further violated § 4o by failing to provide the plaintiffs with disclosure documents describing the Echo One pool investment. The plaintiffs alleged that First Commercial aided and abetted Hoffberg's fraudulent scheme by permitting him to operate the Echo One pool through his account with First Commercial despite the fact that Hoffberg was not properly registered with the CFTC. In addition, the plaintiffs alleged that First Commercial, through Hermanson, further aided and abetted Hoff-

berg by preparing false confirmation statements for the Echo One account thereby lulling the plaintiffs into retaining their investment in the Echo One pool.

The district court began its analysis of Count VI of the plaintiffs' second amended complaint by noting that § 22(a)(1) of the CEA, 7 U.S.C. § 25(a)(1), provides the exclusive remedies to a plaintiff asserting a private cause of action for damages under the CEA.[5] After analyzing the language of § 22(a), the court concluded that, in a commodity pool case, the only persons subject to a private right of action under the CEA are

be entered for such person any false record thereof;

(iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or

(iv) to bucket such order, or to fill such order by offset against the order or orders of any other person, or willfully and knowingly and without the prior consent of such person to become the buyer in respect to any selling order of such person, or become the seller in respect to any buying order of such person.

(b) Buying and selling orders for commodity

Nothing in this section or in any other section of this chapter shall be construed to prevent a futures commission merchant or floor broker who shall have in hand, simultaneously, buying and selling orders at the market for different principals for a like quantity of a commodity for future delivery in the same month, from executing such buying and selling orders at the market price; *Provided,* That any such execution shall take place on the floor of the exchange where such orders are to be executed at public outcry across the ring and shall be duly reported, recorded, and cleared in the same manner as other orders executed on such exchange; *And provided further,* That such transactions shall be made in accordance with such rules and regulations as the Commission may promulgate regarding the manner of the execution of such transactions.

(c) Inapplicability to transactions on foreign exchanges

Nothing in this section shall apply to any activity that occurs on a board of trade, exchange, or market, or clearinghouse for such board of trade, exchange, or market, located outside the United States, or territories or possessions of the United States, involving any contract of sale of a commodity for future delivery that is made, or to be made, on or subject to the rules of such board of trade, exchange, or market.

§ 6o. Fraud and misrepresentation by commodity trading advisors, commodity pool operators, and associated persons

(1) It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

(2) It shall be unlawful for any commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator registered under this chapter to represent or imply in any manner whatsoever that such person has been sponsored, recommended, or approved, or that such person's abilities or qualifications have in any respect been passed upon, by the United States or any agency or officer thereof. This section shall not be construed to prohibit a statement that a person is registered under this chapter as a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, if such statement is true in fact and if the effect of such registration is not misrepresented.

5. Although the operative complaint in this case is the plaintiffs' second amended complaint, Count VI in that complaint is identical to Count VI in the plaintiffs' first amended complaint. Accordingly, in its order dismissing Count VI of the plaintiffs' second amended complaint, the district court simply incorporated its earlier opinion dismissing the same count in the plaintiffs' first amended complaint. *See Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 878 F.Supp. 1156, 1160–61 (N.D.Ill.1995) (dismissing Count VI of the plaintiffs' first amended complaint).

those who sold or took orders for interests in the commodity pool. The court therefore held that the plaintiffs had no private cause of action against First Commercial under the CEA because the plaintiffs did not allege that First Commercial sold limited partnership interests in the Echo One pool. Accordingly, the court dismissed Count VI of the plaintiffs' second amended complaint.

## II

## DISCUSSION

### A.

We review de novo the district court's decision to dismiss, taking the plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor. *See Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 669 (7th Cir.1998). This case requires this court, for the first time, to interpret the extent to which § 22(a) of the CEA provides a private right of action against entities that aid and abet a violation of the CEA. In addressing this issue, we begin, of course, with the language of the statute. Section 22(a)(1) provides in pertinent part:

Private rights of action

(a) Actual damages; actionable transactions; exclusive remedy

(1) Any person (other than a contract market, clearing organization of a contract market, licensed board of trade, or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person—

(A) who received trading advice from such person for a fee;

(B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;

(C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of—

(i) an option subject to section 6c of this title (other than an option purchased or sold on a contract market or other board of trade);

(ii) a contract subject to section 23 of this title; or

(iii) an interest or participation in a commodity pool; or

(D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

7 U.S.C. § 25(a)(1).

More precisely stated in terms of this statutory language, the issue in this case is straightforward: whether a plaintiff may bring a private cause of action under § 22(a)(1) of the CEA against persons who aid and abet a violation of the CEA, even if such aiders and abettors do not satisfy independently the requirements of subsections (A) through (D) of that statute.

### 1.

Although this court has yet to address this issue, several distinct views on this issue have emerged in the decisions of the district courts and in the submission of the CFTC. We shall first summarize each of these views on the appropriate reading of the statute.

### a.

Several district courts have grappled with this question and concluded that a plaintiff may bring a private cause of action under § 22(a)(1) against persons who aid and abet a violation of the CEA only if those same persons participated in one of the transactions listed in subsections (A) through (D) of that

statute.[6] Those courts adopting this position have focused on the "such person" language in § 22(a)(1)(A)–(D). In their view, the "plain language" of § 22(a)(1) requires a plaintiff to demonstrate that a defendant is one of the "such person[s]" listed in subsections (A) through (D). *See In re Lake States Commodities, Inc.*, 936 F.Supp. 1461, 1467 (N.D.Ill.1996); *Davis v. Coopers & Lybrand*, 787 F.Supp. 787, 794 (N.D.Ill.1992). In addition, these courts have refused to imply a private right of action for aiding and abetting under § 13(a) of the CEA, which provides that "[a]ny person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of the provisions of this chapter ... may be held responsible for such violation as a principal." CEA § 13(a), 7 U.S.C. § 13c(a). Although these courts recognized that § 13(a) was amended in 1983 to remove the language that limited its applicability to administrative proceedings, they held that the alteration did not override the exclusivity proviso in § 22(a)(2). *See Lake States*, 936 F.Supp. at 1467–68; *Davis*, 787 F.Supp. at 795 n. 15. Instead, they concluded that the amendment to § 13(a) "granted additional power to the CFTC [but not private litigants] to bring judicial, as well as administrative, proceedings against those who aid and abet violations" of the CEA. *Lake States*, 936 F.Supp. at 1467–68.

In this case, the district court applied this analysis and concluded that the plaintiffs could not bring a private cause of action against First Commercial because it had not sold interests in the commodity pool to the plaintiffs, see CEA § 22(a)(1)(C)(iii).

**b.**

A contrary position was embraced by a district court in *In re ContiCommodity Ser-* *vices, Inc.*, 733 F.Supp. 1555 (N.D.Ill.1990), *rev'd on other grounds*, 976 F.2d 1104 (7th Cir.1992). In that case, the plaintiffs sought to bring a private cause of action against several defendants for aiding and abetting a violation of the CEA despite the fact that the defendants were not "such person[s]" within the meaning of § 22(a)(1)(A)(D). In assessing whether § 22(a)(1) authorized such an action, the court stated that, looking solely to the plain language of § 22(a)(1), only defendants who qualify as "such person[s]" could be liable in a private cause of action. *See id.* at 1567. Nonetheless, the court reasoned that § 22(a)(1) should not be read in isolation but rather should be read in conjunction with § 13(a). Accordingly, the court held that § 13(a) "enables an injured party to bring a court suit against an aider, abetter, inducer, combiner, etc. who was not the 'such person' under § 22(a)(1)(A)–(D)." *Id.*

**c.**

A third view is brought to us by the CFTC, the agency charged with the administration of the statute. The CFTC submits that § 22(a)(1) creates, without any dependence on § 13(a), a private right of action against a person who aids and abets a primary violator in undertaking one of the transactions listed in subsections (A) through (D) of that statute. In analyzing § 22(a)(1), the CFTC divides the statutes into two parts. The first part of § 22(a)(1) identifies the persons potentially liable of damages as "any person who" violates the CEA or "willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter." Then, the second part of that section limits the universe of plaintiffs who have standing to sue for damages and limits the damages recoverable under the private right of action

---

**6.** *See In re Lake States Commodities, Inc.*, 936 F.Supp. 1461, 1466–68 (N.D.Ill.1996); *Davis v. Coopers & Lybrand*, 787 F.Supp. 787, 795 n. 15 (N.D.Ill.1992); *see also Kolbeck v. LIT Amer., Inc.*, 923 F.Supp. 557, 566 (S.D.N.Y.1996) (holding that in order to sue defendant under CEA, the plaintiff must have one of the four relationships with the defendant designated in § 22(a)(1)(A)–(D)). Two other district judges in the Northern District of Illinois have now agreed with this position in unpublished opinions. *See* *Unity House, Inc. v. First Commercial Fin. Group*, No. 96C–1716, 1997 WL 701345, at *8 (N.D.Ill. Nov. 5, 1997); *Aspacher v. Kretz*, No. 94 C 6741, 1997 WL 311967, at *8 (N.D.Ill. June 5, 1997). *But see In re ContiCommodity Servs., Inc.*, 733 F.Supp. 1555, 1567 (N.D.Ill.1990) (holding that plaintiffs may bring a private action for damages against any person who aids and abets a violation of the CEA committed by a participant in one of the four transactions enumerated in § 22(a)(1)(A–D)), *rev'd on other grounds*, 976 F.2d 1104 (7th Cir.1992).

to those resulting from certain specified transactions. *See* § 22(a)(1) (limiting damages recoverable under private right of action to "actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person").

Accordingly, in the CFTC's view, the statutory language of § 22 supports the conclusion that an aider and abettor of the primary violator can be held liable in a private action for damages when the "violation" for which the suit is brought is both causally and transactionally connected to the actual damages suffered by the putative plaintiff. Consistent with this reading of the statute, the CFTC submits further that § 22 does not require that an aider and abettor sued under that section independently satisfy the requirements of subsections (A) through (D). Instead, the CFTC asserts, an aider and abettor may be held liable under that section so long as the primary violator participates in one of the transactions listed in subsections (A) through (D). In reaching this conclusion, the CFTC stresses that § 22(a)(1) does not provide that the plaintiff's damages must be caused by the person charged under the statute, but only that they must be "caused by *such violation*" (emphasis added). Thus, if the primary violator's wrongdoing satisfies the requirements of subsections (A) through (D), then the plaintiff's damages are "caused by such violation," *regardless of whether the* aider and abettor independently would satisfy the requirements of those subsections.

**2.**

Having set forth the various views on the appropriate interpretation of the statute, we now turn to our own analysis.

In our view, the language of § 22(a)(1) is ambiguous. On the one hand, § 22(a)(1) clearly creates a private right of action against "any person ... who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter." On the other hand, as the district courts in *Lake States* and *Davis* recognized, § 22(a)(1) can be read to require that the defendant qualify as one of the "such person[s]" listed in subsections (A) through (D).

■ It is our task to resolve this ambiguity. Having studied the approaches outlined in the preceding section, we believe that the CFTC's interpretation of § 22 is correct. It is the only approach that gives meaning to every word and every phrase of § 22. *See Walters v. Metropolitan Educ. Enters.,* 519 U.S. 202, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect.").[7] By contrast, the interpretation adopted by the courts in *Lake States* and *Davis* effectively reads out of the text Congress' specific reference to aiders and abettors in § 22. As we noted earlier, those courts interpreted § 22 as requiring plaintiffs to demonstrate that the aider and abettor is one of the "such person[s]" listed in subsections (A) through (D). Such an interpretation, however, does not comport with the traditional understanding of aiding and abetting liability. By definition, an aider and abettor knowingly contributes to the principal's violation, rather than committing an independent violation of its own.[8] In light of this definition, to say that an aider and abettor can only be liable if it performs one of the

---

**7.** *See also Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1166, 137 L.Ed.2d 281 (1997) (stating that "[i]t is the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section" (internal quotations, citations and punctuation omitted)); *United States v. Obiechie,* 38 F.3d 309, 315 (7th Cir.1994) (stating that, if possible, effect must be given to every clause and word in a statute); *United States v. Franz,* 886 F.2d 973, 978 (7th Cir.1989) (setting forth general rule that " 'court should not construe a statute in a way that makes words or phrases meaningless, re-

dundant, or superfluous' ") (quoting *Zimmerman v. North Am. Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983)).

**8.** *See, e.g., Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 176, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (stating that "aiding and abetting liability extends beyond persons who engage, even indirectly, in a proscribed activity" and instead "reaches persons who do not engage in the proscribed activities at all, but who give a degree of aid to those who do").

actions listed in subsections (A) through (D) renders meaningless the words of the statute because the aider and abettor would then be a principal.

Accordingly, in order for the language of § 22 to make sense—and in order for our interpretation to recognize fully the intent of the Congress—"such person" in subsections (A) through (D) must refer to the principal and not the aider and abettor. Moreover, this reading of § 22(a)(1) is consistent with the text of the statute because, as the CFTC points out, that section does not require that the plaintiffs' damages be caused by the person charged under the statute, but instead requires only that the damages be "caused by such violation." We hold, therefore, that § 22(a)(1) does not require that an aider and abettor independently satisfy subsections (A) through (D), but rather creates, on its own, a private cause of action against an aider and abettor who aids and abets a principal in undertaking one of the specifically enumerated transactions in subsections (A) through (D).

This interpretation is further supported by consideration of the CEA as a whole. Indeed, in determining congressional intent, we " ' "look to the particular statutory language at issue, as well as the design of the statute as a whole." ' " *Hanson v. Espy*, 8 F.3d 469, 473 (7th Cir.1993) (quoting *Orrego v. 833 West Buena Joint Venture*, 943 F.2d 730, 734 (7th Cir.1991) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988))).[9] Specifically, as we noted earlier, § 13(a) of the CEA, 7 U.S.C. § 13c(a), provides that "[a]ny person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of the provisions of this chapter ... may be held responsible for such violation as a principal." This section strongly indicates a congression-

al intent to treat aiders and abettors as principals under the CEA. Furthermore, it is significant that Congress amended § 13(a) to remove language restricting its operation to administrative proceedings brought under the CEA as part of the same legislation in which it created § 22. Congress intended that amendment to extend § 13(a) to "all legal proceedings under the Act." H.R.Rep. No. 5447, at 104–05 (1982), *reprinted in* 1982 U.S.S.C.A.N. 3871, 3953–54. In our view, the fact that this amendment to § 13(a) was made contemporaneously with Congress' adoption of § 22 strongly suggests that Congress intended aiders and abettors to CEA violations to be subject to private actions for damages under that section. As we noted above, the only way to give effect to this intent is to interpret § 22 as authorizing a private cause of action against an aider and abettor who aids and abets a principal in undertaking one of the specifically enumerated transactions in subsections (A) through (D), even if the aider and abettor does not independently satisfy the requirements of subsections (A) through (D).

We emphasize that we do not hold, as the court did in *In re ContiCommodity Services, Inc.*, 733 F.Supp. 1555, 1567 (N.D.Ill.1990), that § 13(a) creates, on its own, a private cause of action for aiding and abetting liability under the CEA. Instead, we simply view that section as supportive of our interpretation of the text of § 22. We also note that this case presents a statutory framework different from that encountered by the Supreme Court in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In that case, the Supreme Court refused to imply a private cause of action for aiding and abetting violations of § 10(b) of the 1934 Securities Exchange Act ("the 1934 Act"). In reaching that holding, the Court ruled

---

**9.** *See also Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997) (noting that Court's interpretation of statutory language "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"); *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524, 94–95 (1993) (stating that Court's examination of statutory lan-

guage is "guided not by a single sentence or member of a sentence, but look[s] to the provisions of the whole law, and to its object and policy" (internal quotations omitted)); *Deal v. United States*, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (stating that it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used").

that the extent of private liability must be governed by the statutory text of § 10(b). *See id.* at 174–76, 114 S.Ct. 1439; *see also Pinter v. Dahl,* 486 U.S. 622, 653, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) (stating that "[t]he ascertainment of congressional intent with respect to the scope of liability created by a particular section of the Securities Act must rest primarily on the language of that section"). The Court stressed, however, that Congress had taken a statute-by-statute approach to civil aiding and abetting liability and that its holding in that case was based on the fact "that none of the express causes of action in the 1934 Act further imposes liability on one who aids and abets a violation." *Central Bank,* 511 U.S. at 179, 114 S.Ct. 1439. By contrast, the statute at issue in this case—§ 22 of the Commodity Exchange Act—explicitly provides for a private civil action against "any person who" violates the CEA or "willfully aids, abets, counsels, induces, or procures the commission of a violation" of that Act. CEA § 22(a)(1), 7 U.S.C. § 25(a)(1). Indeed, in *Central Bank,* the Supreme Court explicitly pointed to that provision as an example of a statute in which Congress explicitly created a cause of action for aiding and abetting liability. *See* 511 U.S. at 179, 114 S.Ct. 1439.

We also note that, in resolving this ambiguity, we have given due consideration to the views of the CFTC. Although the CFTC's interpretation of the statute is not binding on this court, the views of the agency charged with the administration of the statute carry considerable weight. *See Cvelbar v. CBI Ill. Inc.,* 106 F.3d 1368, 1376 (7th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997); *Time Warner Cable v. Doyle,* 66 F.3d 867, 876 (7th Cir.1995), *cert. denied,* 516 U.S. 1141, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996).

Accordingly, we hold that the district court erroneously interpreted § 22 of the CEA as barring the plaintiffs from bringing a private cause of action against First Commercial because it did not independently satisfy the requirements of § 22(a)(1)(A)–(D).

**B.**

Although the district court dismissed the plaintiffs' complaint based on an erroneous interpretation of § 22(a)(1) of the CEA, we may affirm the judgment of that court on any ground supported by the record. *See Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 703–04 (7th Cir.1998). We proceed, therefore, to consider whether the allegations in the plaintiffs' second amended complaint are sufficient to state a claim against First Commercial for aiding and abetting liability under § 22(a)(1).

■ As an initial matter, we stress that a plaintiff seeking to state a cause of action for aiding and abetting liability under § 22 of the CEA must allege that the aider and abettor acted knowingly. This is clearly required by the plain wording of the statute, which provides a private cause of action against any person "who *willfully* aids, abets, counsels, induces, or procures the commission of a violation of this chapter" (emphasis added). Moreover, such a requirement is certainly compatible with the traditional understanding of aiding and abetting liability, i.e., the aider and abettor knowingly assists the principal in the attainment of the illegal objective and therefore is sanctioned as the principal.[10]

■ Indeed, we have previously noted that the CFTC, the agency charged with the administration of the statute, has interpreted aiding and abetting liability under the CEA as coterminous with the criminal standard of aiding and abetting liability. *See Bosco v. Serhant,* 836 F.2d 271, 279 (7th Cir.1987)

---

**10.** *See United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.) (stating that an individual cannot be held liable as an aider and abettor unless "he in some sort associate[s] himself with the venture, ... participate[s] in it as something he wishes to bring about, [and] ... seek[s] by his action to make it succeed"); *see also United States v. Pino-Perez,* 870 F.2d 1230, 1235 (7th Cir.1989) (en banc) (stating that this circuit endorses Judge Learned Hand's definition

of aiding and abetting liability in *Peoni*), *cert. denied,* 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989); *cf. Schultz v. Rhode Island Hosp. Trust Nat'l Bank,* 94 F.3d 721, 730 (1st Cir.1996) (holding that, in order to establish a common law cause of action for aiding and abetting, a plaintiff "must at least demonstrate some measure of 'active participation' and the knowing provision of substantial assistance ... to the principal's alleged fraud." (emphasis added)).

(citing *In re Richardson Sec., Inc.*, [19801982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,145, at 24,642–46 (CFTC Jan. 27, 1981)), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). Indeed, the language employed in §§ 13(a) and 22(a)(1) of the CEA is virtually identical to that employed in the federal aiding and abetting statute, 18 U.S.C. § 2.[11] *See Bosco*, 836 F.2d at 279 (noting that the legislative history of § 13(a) of the CEA shows that the aiding and abetting provision was modeled on, and was intended to be interpreted consistently with, 18 U.S.C. § 2). The elements that a plaintiff must allege to state a claim for aiding and abetting liability under § 22 of the CEA are therefore the same elements that must be established to prove a violation of 18 U.S.C. § 2. Accordingly, in order to state such a claim against First Commercial in this case, plaintiffs must allege that First Commercial (1) had knowledge of the principal's (Hoffberg's) intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective. *See United States v. Petty*, 132 F.3d 373, 377 (7th Cir. 1997); *see also Bosco*, 836 F.2d at 279 (stating that "[a]iding and abetting in the criminal law requires not only knowledge of the principal's objective but a desire to help him attain it").

In their second amended complaint, the plaintiffs clearly fail to allege facts sufficient to satisfy the first and second elements of the standard set forth above. First, the plaintiffs fail to allege facts indicating First Commercial had knowledge of Hoffberg's Ponzi scheme. Indeed, in para. 132 of their second amended complaint, the plaintiffs admit that they "are unaware of any facts which would indicate that … First Commercial knew of the Ponzi/false appearance of profitability aspect of the deceptive scheme to sell interests in the Echo One pool." R.88 at ¶ 132. By virtue of this admission, the plaintiffs have pleaded facts that justify the rendition of judgment against them. *See Tregenza v. Great Amer. Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993) (stating that if plaintiff "pleads facts that show his suit is … without merit, he has pleaded himself out of court"), *cert. denied*, 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994). Second, the plaintiffs also do not allege that First Commercial intended to help Hoffberg perpetuate his scheme. Indeed, the plaintiffs could not make such an allegation given their admission that they are unable to allege that First Commercial had knowledge of the Ponzi scheme.[12]

### Conclusion

In their second amended complaint, the plaintiffs failed to plead facts sufficient to

---

**11.** That section provides:

§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**12.** The plaintiffs do allege that First Commercial knowingly allowed Hoffberg to operate as an unregistered commodity pool operator and thereby knew of the "false appearance of legitimacy aspect of the scheme." R.88 at ¶ 132. In a similar vein, the plaintiffs also allege that First Commercial knew of irregular activity in Hoffberg's accounts. Specifically, the plaintiffs allege that First Commercial knew that Hoffberg had loaned money to its employee (Hermanson) and that third-party funds were being traded in Hoffberg's account. *See* R.58 at ¶¶ 38–49. However, rather than constituting an allegation that First Commercial knew of Hoffberg's scheme and deliberately sought to help him perpetuate it, these allegations suggest that First Commercial was negligent in its monitoring of Hoffberg's account. Allegations of negligence simply do not satisfy the scienter requirement of an aiding and abetting claim under the CEA. *Cf. In re Earl K. Riley Co.*, [1982–1984 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,854, at 27,583–84 (C.F.T.C. Nov. 24, 1981) (stating that finding of recklessness alone is not sufficient for claim of aiding and abetting under the CEA); *see generally United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.) (tracing history of aiding and abetting liability in criminal law and holding that an individual cannot be held liable as an aider or abettor simply because of "the probability that the forbidden result would follow upon the accessory's conduct" but rather requires "that he in some sort associate himself with the venture, that he participate in it as something he wishes to bring about, [and] that he seek by his action to make it succeed").

support a claim against First Commercial for aiding and abetting liability under § 22 of the CEA. On that basis, we affirm the judgment of the district court.

AFFIRMED.