# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 16, 2011

No. 08-41217

Lyle W. Cayce
Clerk

WILLIAM E AMACKER; LINDY R BIANCHI; JOSEPH DELBOVE; ET AL,

Plaintiffs–Appellants,

v.

RENAISSANCE ASSET MANAGEMENT LLC, also known as RAM I LPM, also known as RAM I LLC; ANTHONY MICHAEL RAMUNNO; MAN FINANCIAL (IL); MF GLOBAL INC.; LIND-WALDOCK & CO LLC; VISION LP; VISION FINANCIAL MARKETS LLC (NY); R.J. O'BRIEN & ASSOCIATES INC (NY), doing business as Tradestation; TRADESTATION TECHNOLOGIES INC (IL); MAN FINANCIAL INC (NY); MF GLOBAL INC (IL); SARINNA CHIANG; KARIN MADDOX; CAREN I JOSEPHS,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before OWEN and SOUTHWICK, Circuit Judges.*

PRISCILLA R. OWEN, Circuit Judge:

---

* This case is being decided by quorum due to the death of Judge William L. Garwood on July 14, 2011. 28 U.S.C. § 46(d).

No. 08-41217

Appellants brought suit alleging that futures commission merchants violated the Commodity Exchange Act[1] by aiding and abetting an investment pool operator in his scheme to defraud investors. The district court dismissed the complaint for failure to state a claim against the futures commission merchants. We affirm.

## I

The plaintiffs in this case were investors in a commodity pool operated by defendant Anthony Ramunno. They invested under the impression that Ramunno would use their money to trade in the commodities markets. Ramunno, however, operated his company Renaissance Asset Management as a classic Ponzi scheme: he paid "profits" to investors with monies provided by new investors.

In executing this scheme, Ramunno would solicit funds, pool them into brokerage accounts, and trade the pooled funds in the commodities futures markets through various futures commission merchants. Ramunno represented to the merchants that he was trading for his own personal account through an unincorporated sole proprietorship.

Eventually, a potential investor alerted the Commodity Futures Trading Commission (CFTC) to irregularities in reporting generated by Ramunno and his company. The CFTC initiated an investigation and, within a week, froze Renaissance Asset Management's assets, ceased all trading by the company in the commodities market, and initiated a civil action alleging numerous violations of the Commodity Exchange Act (CEA). Subsequently, Ramunno was criminally indicted and pled guilty to wire fraud and mail fraud.

The investors filed a civil suit against the futures commission merchants under 7 U.S.C. § 25(a), which authorizes a private right of action against any

---

[1] 7 U.S.C. §§ 1-27f.

No. 08-41217

person who aids and abets a violator of the act. The investors' complaint alleged that the merchants "willfully" aided and abetted the fraud by not conducting background investigations into Ramunno and his company as required by the Patriot Act amendments to the Bank Secrecy Act (BSA). While acknowledging that the merchants had no actual knowledge of Ramunno's scheme, the investors argued that the failure to investigate nevertheless demonstrated extreme recklessness. The investors asserted that, had an investigation been conducted, the merchants would have discovered in a week (the same time it took the CFTC to uncover the fraud) that Ramunno was not trading for his own accounts, but was investing for a commodity pool, while unregistered as either a commodity trading advisor or a registered commodity pool operator. Further, the investors argued that this discovery would have prompted the merchants either to close Ramunno's accounts or report their findings to the CFTC, preventing the loss of millions of dollars.

The district court granted the merchants' motion to dismiss, finding that actual knowledge and specific intent to further the principal's violations are required to establish aiding and abetting liability under the CEA. The investors timely appealed.

## II

We review de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6).[2] Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face.[3] "A claim has facial plausibility when the pleaded factual

---

[2] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

[3] *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010).

No. 08-41217

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4]

### III

The CEA creates a private right of action for "actual damages" caused by "[a]ny person . . . who violates this chapter or who willfully aids [or] abets . . . the commission of a violation of this chapter."[5]    The key point of dispute is the definition of "willfully."    The merchants urge this court to adopt an interpretation that requires actual knowledge and specific intent.  By contrast, the investors advocate interpreting "willfully" to mean "extreme recklessness," a lower standard than knowledge and intent.

The investors rely primarily on this court's decision in *Abbott v. Equity Group, Inc.*[6] to argue that "extreme recklessness" is sufficient to satisfy the scienter requirement of § 25(a) under the facts of this particular case.  Our decision in *Abbott* involved a claim for aiding and abetting violations of § 10(b) of the Securities Exchange Act of 1934 (SEA) and related Rule 10b-5.[7]  This court explained that "[t]o establish liability the plaintiff must show (1) that the primary party committed a securities violation; (2) that the aider and abettor had 'general awareness' of its role in the violation; and (3) that the aider and abettor knowingly rendered 'substantial assistance' in furtherance of it."[8]  The *Abbott* court further explained that underlying "general awareness" and knowing "substantial" assistance:

---

[4] *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

[5] 7 U.S.C. § 25(a)(1).

[6] 2 F.3d 613 (5th Cir. 1993).

[7] *Id.* at 621.

[8] *Id.* (citing *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1126 (5th Cir. 1988), *vacated on other grounds by Fryar v. Abell*, 492 U.S. 914 (1989)).

No. 08-41217

is a single scienter requirement that varies on a sliding scale from "recklessness" to "conscious intent." The plaintiff must show conscious intent, unless there is some special duty of disclosure, or evidence that the assistance to the violator was unusual in character and degree. In the latter two instances, a recklessness standard applies.[9]

Thus, *Abbott* establishes that, in the context of securities fraud, recklessness can be the proper scienter for civil aiding and abetting liability, assuming certain prerequisites are met. However, this court has never held that the elements of aiding and abetting in the SEA context are applicable in the CEA context. Therefore, although informative, *Abbott* is not controlling.

The only two circuit courts to have considered this particular question make no reference to the SEA standard for aiding and abetting liability.[10] Both held that "willfully aids" as used in § 25(a) requires actual knowledge.

In *Damato v. Hermanson*, the Seventh Circuit held "that a plaintiff seeking to state a cause of action for aiding and abetting liability under[7 U.S.C.§ 25(a)] must allege that the aider and abettor acted knowingly."[11] The court reasoned that this standard is "clearly required by the plain wording of the statute" due to its use of the word "willfully."[12] The court also observed that this interpretation comports with the "traditional understanding of aiding and abetting liability, i.e., the aider and abettor knowingly assists the principal in the attainment of the illegal objective and therefore is sanctioned as the principal."[13]

---

[9] *Id.* (internal citations omitted).

[10] *See Nicholas v. Saul Stone & Co.*, 224 F.3d 179 (3d Cir. 2000); *Damato v. Hermanson*, 153 F.3d 464 (7th Cir. 1998).

[11] 153 F.3d at 472.

[12] *Id.*

[13] *Id.*

5

No. 08-41217

Most significantly, the *Damato* court analyzed the elements of aider and abettor liability under § 25(a)(1) as being identical with those contemplated by the federal criminal aider and abettor statute, 18 U.S.C. § 2.[14]  It therefore concluded that "in order to state . . . a claim against [a defendant,] . . . plaintiffs must allege that [the defendant] (1) had knowledge of the principal's . . . intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective."[15]  This interpretation is consistent with both the traditional understanding of what is meant by "aiding and abetting" and with the language of § 25(a)(1), which contemplates liability for one "who *willfully* aids [and] abets . . . the commission of a violation" of the CEA.[16]  Because the plaintiffs in *Damato* failed to allege that the defendants knew of the Ponzi scheme perpetuated by the primary violator of the CEA, the Seventh Circuit held that the plaintiffs had not stated a claim under § 25(a).[17]

The Third Circuit, faced with the same question two years later, "agree[d] with the Seventh Circuit that aiding and abetting in the context of the CEA is congruent with aiding and abetting as defined by 18 U.S.C. § 2," for substantially the same reasons.[18]  Accordingly, it ruled that the plaintiffs "f[e]ll short" of stating a claim under § 25(a) because they failed to allege "that the defendant FCMs had the required knowledge and guilty intent."[19]  As in the present case, the plaintiffs merely alleged that the merchants "did not

---

[14] *Id.* at 473.

[15] *Id.*

[16] 7 U.S.C. § 25(a)(1) (emphasis added).

[17] *Damato*, 153 F.3d at 472.

[18] *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 189 (3d Cir. 2000).

[19] *Id.*

adequately supervise" the primary violators and "knew or recklessly disregarded facts showing that [the primary violators] were engaged in various activities violative of the CEA."[20] The Third Circuit concluded that this "alleged, at most, that the FCMs acted recklessly," and that "these allegations [were] a far cry from an allegation that the FCMs not only had knowledge of the intent of the [primary violators] to violate the CEA, but . . . [also], the intent to further that violation."[21]

We find that the reasoning of the Seventh and Third Circuits is persuasive. However, even were the "extreme recklessness" construct set forth in *Abbott* applicable to claims brought under 7 U.S.C. § 25(a), an issue we do not decide, the defendant merchants could only be held liable if their conduct met the basic requirements of aiding and abetting. Normally under *Abbott*, aiding and abetting liability cannot be established without a showing of conscious intent.[22] The recklessness standard is applied only if one of two exceptions is demonstrated: (1) that there is "some special duty of disclosure" or (2) that the assistance provided the primary violator was "unusual in character and degree."[23] The investors have not sufficiently alleged that either of these two exceptions apply here.

The investors argue that the merchants' failure to conduct more than a cursory investigation into Ramunno's identity and registration status was in such clear violation of duties imposed on them by the Bank Secrecy Act as to amount to assistance "unusual in character and degree." Although the BSA does

---

[20] *Id.* (internal quotation marks omitted).

[21] *Id.* at 190 (internal quotation marks omitted).

[22] *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 621 (5th Cir. 1993).

[23] *Id.*

impose investigative duties on the merchants,[24] their failure to conduct more than a cursory investigation into Ramunno and his company does not constitute assistance "unusual in character and degree" under this circuit's precedent. The reach of this exception is limited, and "only a narrow band of cases can travel this path."[25] This court has "often reiterated that, '[i]f the evidence shows no more than transactions constituting the daily grist of the mill, [it] would be loathe to find [aiding and abetting] liability without clear proof of intent to violate the . . . law.'"[26]

The merchants did no more than execute regular trades requested by Ramunno, who represented that he was trading for his own personal account. These are clearly "grist of the mill" transactions.[27] The routine execution of trades does not amount to substantial assistance.[28] Moreover, even if the relevant inquiry is the degree of investigation conducted by the merchants, the investors have not alleged that any omission in this regard was so unusual as

---

[24] Under the BSA, the Secretary of Treasury is instructed to promulgate regulations that shall, at a minimum, require financial institutions to implement reasonable procedures for verifying the identity of persons seeking to open an account. *See* 31 U.S.C. § 5318(l)(1). The regulations promulgated by the CFTC require, among other things, that futures commodities merchants adopt procedures for identity verification that would allow them to form a reasonable belief that they know the true identity of each customer. *See* 31 C.F.R. 1026.220(a)(2). When such a belief cannot be formed, the merchants must determine whether to refuse to open an account, close an account, or file a Suspicious Activity Report with the federal government. *See* 31 C.F.R. 1026.220(a)(2)(iii).

[25] *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 526 (5th Cir. 1992).

[26] *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 621 n.24 (5th Cir. 1993) (quoting *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1126 (5th Cir. 1988)).

[27] *See Abbott*, 2 F.3d at 623 (quoting *Ins. Co. of N. Am. v. Dealy*, 911 F.2d 1096, 1101 (5th Cir. 1990) (finding that routine assistance, "even if substantial," is "merely 'grist of the mill'")).

[28] *Id.*

to amount to substantial assistance. The complaint reveals that Ramunno provided enough plausible information to avoid raising suspicion.

Likewise, the investors have not established a special duty of disclosure. This court has previously held that § 6k(1) of the CEA does not impose a duty on merchants to inquire into the registration status of its customers "merely because that customer may be acting on behalf of other individuals."[29] Further, the BSA disclosure requirements are owed to the State, not private investors.[30] Accordingly, the investors have not established that either of the two exceptions to aiding and abetting liability applies, even assuming those exceptions are pertinent under 7 U.S.C. § 25(a).

Finally, even if a BSA-imposed duty did exist, the investors have failed to allege sufficient "extreme recklessness" to state a claim. This court has defined "recklessness" in the context of aiding and abetting violations of securities laws as follows:

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.[31]

This "degree of recklessness in one's disregard for the truth necessary to serve as scienter is extremely high."[32]

---

[29] *Brown v. Royce Brokerage, Inc.*, 632 F.2d 652, 654 (5th Cir. 1980).

[30] *See Marlin v. Moody Nat'l Bank, N.A.*, No. H-04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) (unpublished) (stating that the duty of disclosure must be owed to the plaintiffs), *aff'd Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534 (5th Cir. 2007).

[31] *Abbott*, 2 F.3d at 621 n.25 (quoting *Broad v. Rockwell Int'l Corp.*, 624 F.2d 929, 961-62 (5th Cir. 1981)).

[32] *SEC v. Sw. Coal & Energy Co.*, 624 F.2d 1312, 1321 n.17 (5th Cir. 1980).

No. 08-41217

The investors argue that the merchants acted recklessly in not conducting an adequate investigation into Ramunno's registration status and identity. However, they also allege that Ramunno provided the merchants with information that he was trading only for his own personal benefit. Moreover, the investors allege that Ramunno initiated a registration process in order to obfuscate his trail. Thus, the allegation is not that the merchants simply accepted Ramunno and his company as a customer without any explanation, but that the merchants should have conducted a more extensive investigation, required new documentation prior to executing every trade, and compared Ramunno's losses in the market to the additional funds placed in his accounts to surmise that he was not trading for himself.

The investors have not alleged such extreme departures from standards of care under the BSA that it can be inferred that the danger of misleading buyers must "have been actually known or so obvious that the [aider and abettor] must have been aware of it."[33] The merchants in this case executed unexceptional trades requested by a customer who represented that he was trading on his own account. The merchants had no reason to know that Ramunno was operating as a commodity pool or trading on behalf of other investors, let alone that Ramunno was running a fraudulent Ponzi scheme. Even if the merchants actions could be construed as negligent, they were not "severely reckless."

*    *    *

We conclude that the district court acted properly in dismissing the investors' aiding and abetting claims. We AFFIRM.

---

[33] *Id.*

10